### SEVERANCE v. BIZALLION.

(Supreme Court, Appellate Term.　March 10, 1910.)

1. ATTORNEY AND CLIENT (§ 64*)—"RETAINER."

A retaining fee, or "retainer," is a payment in advance, to cover future services and disbursements until further provision is made.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 86, 87; Dec. Dig. § 64.*

For other definitions, see Words and Phrases, vol. 7, pp. 6196, 6197.]

2. ATTORNEY AND CLIENT (§ 64*)—AGREEMENT FOR RETAINER—RIGHT TO RECOVER.

A client interviewed a lawyer about how to recover advances made to a restaurant business, and the lawyer advised him that it was his belief that a restaurant could not be put into bankruptcy, and that it would be unwise to accept a preference, but that he would take the matter up on being paid a retaining fee of $250, and the client was to furnish a statement of facts. The client hired other attorneys, and the first attorney performed no other services. *Held*, that there was no basis for a recovery of the retaining fee, but that the attorney was entitled to recover the value of the advice given.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 64.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Lena Severance against Henry H. Bizallion. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered, unless reduction of judgment is stipulated for.

Argued before SEABURY, GUY, and WHITNEY, JJ.

Williamson & Smith, for appellant.

H. C. Burnstine, for respondent.

WHITNEY, J. This is an action by plaintiff, as assignee of Wales F. Severance, an attorney at law, to recover for legal services agreed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to be rendered, but in main not actually rendered. The pleadings were oral. According to the testimony of Mr. Severance, which was believed by the court, defendant consulted him about the affairs of a downtown lunch company, being afraid that he would lose a large amount of money which he had advanced to the company, and wishing to know how he could get his money out. Severance told him that according to his recollection a restaurant company cannot be adjudicated a bankrupt; that he would look it up and make sure; that it would be unwise, for reasons stated, to take a preference by way of a chattel mortgage upon the assets of the concern, but after full acquaintance with the facts he would take the matter up. It was agreed that he should do so upon being first paid a retaining fee of $250. Defendant was to send down a statement of the facts, together with a check for the amount stated. He did not do so, but went to other lawyers, and through them was appointed receiver of the company under the laws of the state of New York. Severance never did any work in the case, but has been permitted to recover the $250 on the supposed authority of Carlisle v. Barnes, 102 App. Div. 573, 92 N. Y. Supp. 917.

Having examined the original record in this case, I think that its effect has been misapprehended, and that it has only a superficial similarity to the case at bar. Mr. Barnes had undertaken the collection from the United States treasury of certain customs duties claimed to have been exacted under an unconstitutional law. Test cases were pending in the Supreme Court of the United States, which Mr. Carlisle was to argue as leading counsel. Barnes was not a lawyer, and had taken up the cases on a contingent fee of 20 per cent. of the recovery, with the understanding that he should hire a lawyer and pay him out of the 20 per cent. He approached Carlisle with this in view in the fall of 1900, and they had conferences in which legal advice was given. The questions involved related not only to the constitutionality of the law, but also to the form of remedy. Barnes had previously retained another lawyer, who had brought a suit which had been thrown out of the United States Circuit Court for mistake as to the remedy (Lascelles v. Bidwell, 102 Fed. 1004), at large expense to his clients. The remedy then suggested by the Circuit Court was afterwards held to be also a mistaken one. Goetze v. United States, 182 U. S. 221, 21 Sup. Ct. 742, 45 L. Ed. 1065. The test cases were argued in the United States Supreme Court in January, 1901. While he did not attempt thereafter to hold Barnes to the original verbal understanding, nevertheless the advice that he had given during the previous autumn put the latter under considerable moral obligation. A definite contract was made between them in February, by which Carlisle was to receive one-fourth of Barnes' 20 per cent. in case of success; and he continued thereafter to give advice, although his advice had not yet been followed when the Supreme Court handed down its decisions, on May 27th, sustaining his contention both as to the unconstitutionality of the exaction and as to the form of the remedy. Dooley v. United States, 182 U. S. 222, 21 Sup. Ct. 762, 45 L. Ed. 1074; Downes v. Bidwell, 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088. The United States ac-

quiesced in the decisions, so that the only legal service thereafter necessary was an argument before the Comptroller of the Treasury, in order to establish that the claims were payable out of the general appropriation for the department.  But the Attorney General of the United States, who had argued the questions against Carlisle in the Supreme Court, had just retired from office, and Barnes retained him for this final service, paying him the precise amount which he had agreed to pay to Carlisle for his entire services in regard to the matter.  The contract in Carlisle v. Barnes, therefore, belongs to the class of contracts for a fixed or contingent fee, to be paid upon the successful termination of the lawyer's services.  In such a case the client cannot, just as success is at hand, change the agreement into one for a quantum meruit by refusing to permit the final services.

The present is not a case of fixed or contingent fee.  Here defendant's promise was to pay a retaining fee before the commencement of the services for which he was to be compensated.  Plaintiff relies on the definition of retaining fee in Matter of Schaller, 10 Daly, 57, where it is defined as "intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other, and receiving pay from him."  See, also, Pierce v. Newlin, 46 Misc. Rep. 122, 124, 91 N. Y. Supp. 377.  The fee thus defined is the so-called "retainer out."  The ordinary present definition of a retaining fee or retainer is different.  It is a payment in advance, to cover future services and disbursements until further provision is made.  If it is not paid, and no services are rendered, I do not see any basis upon which it can be sued for.

But Mr. Severance had already given some advice before the arrangement for the retainer was made.  He is entitled to recover for the value of that.  He complains, and it may be true, that defendant came to him, holding out expectation of future employment, in order to get an opinion as to his affairs, and then go to another lawyer in hopes of cheaper services.  The matter involved here was stated by the defendant to be $6,000 or $8,000.  The advice was not purely negligible in character, but of value.  The facts are not fully stated; but we regard it as sufficiently established that the services rendered were worth $25, if not more.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless plaintiff stipulates to reduce the amount of the judgment to $25 and costs, in which case it should be affirmed, without costs.  All concur.