In re Joan RORABAUGH, d/b/a Red X Pharmacy, Debtor.

Bankruptcy No. 84–40105.

United States Bankruptcy Court, D. Kansas.

July 3, 1986.

Keith A. Greiner, Emporia, Kan., pro se.

Michael C. Helbert, Guy, Helbert, Bell & Smith, Emporia, Kan., for debtor.

Edward J. Nazar, Wichita, Kan., Trustee.

Kurt A. Stohlgren, Wichita, Kan., Office of U.S. Trustee.

### ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on an objection by Joan Rorabaugh (hereinafter "the debtor") to a pre-petition attorney fee claim filed in this Chapter 11 case by Keith A. Greiner (hereinafter "Greiner") and an objection by the U.S. Trustee to Greiner's request for administrative fees and expenses pursuant to § 503(b).

The debtor objects to the unsecured claim of Greiner, her pre-petition attorney, on the basis of alleged conflicts of interest which existed during his representation of her. The U.S. Trustee objects to any post-petition fees and expenses for Greiner, who represented himself as a petitioning creditor in the debtor's involuntary Chapter 11, because his efforts did not substantially contribute to the estate and were duplicative of the efforts of a subsequently-appointed Chapter 11 trustee. Upon consideration of the exhibits, affidavits, testimony of witnesses, and the entire record, the court concludes that Greiner has a valid unsecured claim in the amount of $7,558.82 and is entitled to $5,146.48 as an administrative expense for attorney's fees and expenses.

The following shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I.

Greiner had represented the debtor prior to filing this case. He had also represented a client attempting to buy the debtor's drugstore during this pre-petition period. He then filed an involuntary Chapter 11 petition against the debtor as an unsecured creditor, since he was due unpaid attorney's fees. During the Chapter 11 proceeding he represented himself as a creditor of the debtor's estate and also represented the other client who had a continued interest in purchasing the drugstore and its contents from the estate.

This is a unique case. At first blush it would appear to demand that the court deny Greiner his attorney's fees and expenses, both pre-petition and post-petition. However, based on the proof, the court finds he has carried his burden of establishing his claims and there is no basis to deny Greiner's pre-petition attorney's fee claim or to deny his request for administrative expenses and attorney's fees under § 503(b).

The applicant is a sole practitioner in Emporia. He describes his work, which is primarily an office practice, as a "country lawyer's practice." As a country lawyer, he does trial and appellate work but has had relatively little bankruptcy experience. He has been in Emporia since graduating from the University of Virginia School of Law in 1966.

The debtor's husband died approximately five or six years ago. They had been married for five years. Mr. Rorabaugh had very successfully operated the Red X Pharmacy, and "old line" drugstore in Emporia for thirty years prior to his death. The debtor had been a home economics teacher prior to her marriage, at the approximate age of fifty, with no prior business experience. During their marriage, although she occasionally went to the drugstore, her activities were focused primarily in politics, her church, and her garden club. After her husband's death, she unsuccessfully attempted to run the drugstore by herself.

On March 7, 1984, Greiner arranged to meet with the debtor. He sought to convince her to sell the drugstore to his client Don Hill (hereinafter "Hill"), the owner of Hill's Apothecary in Emporia. Greiner had known the debtor as a friend for several years, and a law firm in which he had previously practiced had represented her husband.

Prior to this meeting, a local bank had instituted foreclosure proceedings against the debtor's home because she had defaulted on a business loan. She had failed to answer the state court foreclosure action, and the bank had taken a default judgment against her. The debtor told Greiner something of her disastrous financial situation and that she had done nothing in regard to the foreclosure. The debtor thereupon retained Greiner to represent her in her "financial affairs."

After the meeting, Greiner, now serving as the debtor's attorney, contacted the bank and convinced it to set aside the default judgment. He then delayed the matter as long as possible in order to give the debtor an opportunity to refinance or otherwise repay the note at the bank. During the month following the meeting, the debt-

or contacted two of the other three banks in Emporia, but failed to deliver to them additional information which they requested. Greiner also contacted these banks and, learning of the debtor's strange and inexplicable reluctance to follow up on these leads, unsuccessfully attempted to convince her to do so.

During this same period, a drug supplier had a state court judgment against the debtor. She also owed the state for back sales tax, which led to the forfeiture of her tax number and threats by the state of a lawsuit to recover the money due it.

When Greiner realized that because of his client's lack of action, he could not extend the foreclosure proceeding any longer, he began looking for additional ways for the debtor to obtain the needed funds. The debt to the bank exceeded $100,000, but the bank only held a mortgage on her home. This left the drugstore and its contents available to raise money through sale or by offering it as security.

The Red X Pharmacy's sales had steadily deteriorated since the death of the debtor's husband. She had failed to pay various drug suppliers in a timely fashion, and they were refusing to provide drugs except on a cash-on-delivery basis. Consequently, when customers called in prescriptions, there was little stock on hand. The debtor frequently told these customers the drugs were on order and then tried to borrow from other drugstores while delaying the customer. Consequently, the drugstore's base of customers was rapidly dwindling.

On September 6, 1984, a sheriff's sale occurred, and the bank bid in the debtor's home for $115,000.

At this time, Greiner concluded that the only way the debtor could save her home and protect an interest in a family farm she had inherited from her parents was to sell the drugstore building, the inventory, and sundries. He arranged for her to meet with two interested buyers. One was his client, Hill, and the other was Don Bailey, the owner of the hardware store next door to the drugstore. Although she met with the potential buyers twice, she refused to negotiate with them. Greiner nevertheless received written offers from both. Hill's was an unconditional offer to purchase everything, and Bailey's was contingent upon financing.

Greiner set up additional conferences with these potential purchasers on several occasions, but the debtor cancelled them. This was done despite his advice that she might lose everything if she didn't take some immediate action to obtain the necessary money. The debtor seemed to be unable to accept the reality of her disastrous financial situation or to take steps to resolve it.

In late fall of 1984 Greiner was faced with a client who refused to take any action to obtain financing to redeem her home and protect a family farm and whose major asset, the drugstore, was about to be closed by the state. He determined that the only way his client could survive, or at least maintain her options, was through an involuntary Chapter 11 bankruptcy. This also meant he wouldn't have to sue his client in state court for his considerable fee, causing her further embarrassment in the community and further dismemberment of her property.

To explore this possibility, in December of 1984 Greiner contacted Dale Somers (hereinafter "Somers"), an experienced and well-known attorney in Topeka with an extensive commercial and insolvency practice. Somers was told that the debtor was refusing to do anything, her business was deteriorating, the redemption period was running on the foreclosure sale, and she needed protection. He agreed to assist Greiner in the involuntary bankruptcy action, which he testified was an imaginative and appropriate solution for resolving the myriad problems facing the debtor.

On January 28, 1985, Greiner filed an involuntary Chapter 11 petition against the debtor. The petition was filed shortly before the redemption period ran and the same day the state filed suit in state court to shut down the Red X Pharmacy for operating without a tax number.

The debtor, not surprisingly, failed to respond to the petition and an order for relief was entered on February 28, 1985. The schedules and statement of affairs were prepared by Greiner, since he was the only one familiar with the debtor's affairs.

The bankruptcy court extended the redemption period on the debtor's home until January 2, 1986. The debtor ultimately redeemed her home at 11:00 p.m. on January 2, 1986, nearly a year after the bankruptcy case was initiated. Additionally, the debtor's drugstore building, inventory, and sundries were sold in an orderly manner during the bankruptcy case.

### II.

At the hearing on these objections, the debtor, in predictable fashion, failed to attend, despite the instructions of her current attorney, who stated he expected her to appear and testify. Greiner and Somers, however, attended and testified.

■ From the proof presented, the court concludes that any real or potential conflict of interest arising from Greiner's pre-petition representation of the debtor was fully disclosed to all clients involved in the matter, and that there was no impropriety in Greiner's representation of the debtor. *See* DR 5–105(C) of Kansas' Code of Professional Responsibility. Therefore, the debtor's objection is overruled and the fees requested for the period May 7, 1984 to the middle of December, 1984, totaling $7,558.82, are allowed as an unsecured claim.

■ The court must next consider the fees and expenses requested from mid-November, 1984 to April 30, 1985.[1] Greiner seeks compensation for time expended and expenses incurred during this period as an administrative expense.[2]

The court finds that administrative expense priority is appropriate for these fees and expenses under §§ 503(b)(3)(A), (D), and 503(b)(4). The fees arose from work involving the bankruptcy case. They fall into two categories: 1) work involving initiation of the involuntary bankruptcy, and 2) work related to Greiner's substantial efforts in the bankruptcy case. Both categories are compensable administrative expenses under the Code, and the proof justifies awarding them to Greiner.

Thus, the court awards Greiner a $5,146.48 administrative expense claim for these fees and expenses.

This sum includes the following adjustments made after scrutiny of Greiner's actual time sheets and bills. Time spent on activities of a clerical nature (1.10 hours) has been disallowed. *See In re Horn & Hardart Baking Co.*, 30 B.R. 938 (Bankr.E. D.Pa.1983); *In re Hotel Associates, Inc.*, 15 B.R. 487, 5 C.B.C.2d 669 (Bankr.E.D.Pa. 1981). Photocopies not shown to be other than ordinary office overhead are not reimbursable. *See In re Horn & Hardart Baking Co.*, supra; *In re Rego Crescent Corp.*, 37 B.R. 1000 (Bankr.E.D.N.Y.1984). Time found to be excessive under the lodestar standard, *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 9 B.C.D. 1301 (BAP 1st Cir.1982), has been reduced accordingly. (4.40 hours reduced to 2.05 hours).

■ Lastly, the court must address those fees requested by Greiner for work after April, 1985. In that month, a trustee was appointed and the debtor retained as bankruptcy counsel the firm of Guy, Helbert, Bell & Smith, Chartered. The Guy, Helbert firm has been allowed $6,389.58 for fees and expenses from April 11, 1985, to December 19, 1985. On August 20, 1985, the trustee was also awarded com-

---

1. A portion of this time dates back to November 19, 1984. This time is not included with time allowed as an unsecured claim even though portions were incurred during the same months. It relates to the involuntary bankruptcy case, rather than to Greiner's representation of the debtor.

2. Subparagraphs (3) and (4) of § 503(b) may authorize administrative expense priority for Greiner's application. The court will assume that Greiner intended to invoke these sections in support of his fee application. The court will also assume that Greiner applied for administrative expense priority for necessary *expenses* under both § 503(b)(3)(A) and (D).

pensation for attorney's fees, in the amount of $3,053.50.

Greiner seeks compensation for services performed after April, 1985 relating to seeking a buyer for the pharmacy and arranging for the redemption of the debtor's home. These services were apparently also performed by the Guy, Helbert firm and the trustee. The court finds that Greiner has not met his burden of showing that services rendered after April 30, 1985 were of benefit to the estate and not duplicative of the services performed by the trustee and the attorney for the debtor. Therefore, Greiner's claim for services rendered after April 30, 1985 is DISALLOWED.

IT IS, THEREFORE, SO ORDERED.

## ON MOTION FOR RECONSIDERATION

This matter is before the court on a Motion for Reconsideration, filed by Joan Rorabaugh (hereinafter "debtor"), to an order entered this same date.[1]

Although the motion fails to state whether it is one under Fed.R.Civ.P. 59 or 60, the court will treat it as a motion for new trial and amendment of judgment and/or a motion for relief from judgment or order.

The first ground proffered by the debtor is that the award of administrative expenses and attorney's fees to Keith A. Greiner (hereinafter "Greiner") "is contrary to the facts of this case." From a review of the evidence, the court is satisfied this ground is without merit.

■ The second ground is the debtor's statement that "the testimony of the debtor herself, which through the mistaken inadvertence of the debtor was not presented at the time of the hearing, would prove that [Greiner] did not have the consent of the [debtor] to represent the multiple and conflicting interests of [debtor] and Don Hill."

The hearing on these matters occurred in November of 1985. Proper notice went out from the clerk's office, and all parties appeared with their witnesses. These included attorneys and lay persons from Emporia and Topeka. The debtor failed to appear, and the court recalls her attorney indicated he had informed her of the hearing and expected her to appear to testify. The court further recalls no request for a continuance from debtor's counsel at that time. Given the testimony then presented concerning the debtor's past failures to responsibly meet commitments, the debtor's failure to appear at trial should not have surprised counsel and other parties. Further, from the date of the November hearing to this court's April telephonic announcement of its decision, in which all parties participated, no request was made to reopen the proof by the debtor.

Now that the debtor has received the decision of this court, she wishes to testify without giving any grounds for the "mistaken inadvertence" which caused her absence in the first place. This court does not intend to put the parties to the expense of another hearing, requiring, among other things, the return of all witnesses necessary for rebuttal purposes, when the debtor had ample opportunity to present her own testimony at trial. *In re Cafferky*, 39 B.R. 330, 336 (Bankr.M.D.Tenn.1984).

■ The debtor's last ground for reconsideration is that a conflict of interest existed between Greiner and the debtor because he served as her attorney and as a creditor filing an involuntary bankruptcy petition against her. The court recognizes that Greiner cannot serve as the debtor's attorney while acting as an involuntary petitioning creditor, despite the court's determination that Greiner's motives involved an altruistic attempt to protect the debtor and her property. Accordingly, in its order the court distinguished Greiner's unsecured attorney's fees claim, accrued pre-petition, from the fees given as an administrative claim, accrued during Greiner's representation of himself as an unsecured creditor of

---

1. The order addressed by the debtor's Motion for Reconsideration was previously delivered to the parties' counsel during a telephonic hearing. Hence, a Motion for Reconsideration was filed before the actual order was entered.

the debtor. To hold otherwise would deny the right of an attorney or law firm to participate as an unsecured creditor in bringing an involuntary petition in the bankruptcy court.

Accordingly, the court is DENYING the debtor's motion for reconsideration under both Fed.R.Civ.P. 59 and 60 on the basis that the grounds stated in the motion do not warrant a new trial, amendment of judgment, or relief from judgment.

IT IS, THEREFORE, SO ORDERED.