In re B. MILLER, INC., Debtor.

Bankruptcy No. 1–86–04006.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Aug. 6, 1987.

Paul Nemann, Cincinnati, Ohio, for debtor-in-possession.

Jeffrey P. Harris, Cincinnati, Ohio, for Gidding-Union partnership.

Jacob Myers, Dayton, Ohio, for B. Miller, Inc.

Robert Goering, Cincinnati, Ohio, for Creditors' Committee.

## DECISION and ORDER RE ATTORNEY'S FEE FOR JACOB MYERS

BURTON PERLMAN, Bankruptcy Judge.

This is a Chapter 11 case involving a substantial retail clothing establishment doing business as Gidding-Jenny, Inc. Crucial events occurred in the business life of Gidding-Jenny in November and December, 1986. These events involved a proposed bulk sale of the business of Gidding-Jenny. Creditors found the bulk sale to be unacceptable and responded by the filing of an involuntary bankruptcy case. Debtor swiftly countered this by converting to a voluntary Chapter 11. (It should be understood that there are corporate entities involved, B. Miller, Inc., Gidding-Jenny, Inc., and Gidding-Jenny of Kentucky, Inc. All three of these entities have pending cases in this court which have been consolidated both substantively and procedurally.)

Subsequent to the commencement of the bankruptcy cases, negotiation with creditors occurred, and approval was sought in this court for the sale of the business of the debtors, a sale approved both by creditors and the debtors. Urgency was attached to the matter, first because the purchaser put a deadline on his offer, but ultimately because of the sensible desire to salvage as much of the Christmas season as possible.

Applicant here, Jacob A. Myers, was the attorney for debtors before the bankruptcy. He is an experienced attorney, particularly in the field of business and business acquisitions. He represented the debtors and negotiated the aborted bulk sale. He prepared an asset purchase agreement, as well as attendant documents necessary to that sale.

Upon the advent of bankruptcy, debtors retained experienced bankruptcy counsel. Retention of such counsel was authorized by this court. Such counsel was involved in negotiation with creditors, and conclusion of the sale which was authorized by a court order entered December 10, 1986. Barry Miller, principal of debtors, and also a minority member of the partnership which purchased the business at the sale, asked Myers to participate in the sale which eventually was concluded. Myers attended the closing. His knowledge as corporate counsel of debtors and, in addition, the documents which he had prepared for the aborted bulk sale, were indispensable in making it possible to conclude the ultimate sale on an expedited basis. Indeed, the asset purchase agreement prepared pre-filing by Myers for the bulk sale was structured so that it might be used in the event that an involuntary bankruptcy was filed. Application to this court for appointment of Myers as an attorney for debtors, however, was never made. Myers has now made application for compensation for the substantial services he has undoubtedly rendered herein. In addition, he has filed his own application to be appointed as attorney for the debtor.

Myers has submitted time records on two sheets. The first sheet shows that 73.15 hours were spent on the affairs of debtors between November 1, 1986 and November 22, 1986, prior to the time that bankruptcy

was commenced. (The date of filing was November 24, 1986.) Myers is seeking compensation here for this time. We note that he has filed a proof of claim as well for this service, but asserts therein that he is entitled to compensation therefore as an administrative expense. The second sheet of his time records shows that he spent 26.05 hours on the affairs of debtors post-filing.

■ No objection to Myers' application is made by the debtor. Objection thereto, however, has been made by Gidding-Union Partnership ("Gidding-Union"), the purchaser of the business of debtor. According to a statement by counsel for Gidding-Union, under the terms of the purchase agreement, there is some liability on the part of such purchaser for administrative expenses in the bankruptcy cases. Based upon this representation, we find that Gidding-Union has standing to object.

The first basis for objection by Gidding-Union is that the application fails to comply with the local rules regarding itemization of time spent. We overrule the objection on this ground, finding the information supplied by Myers adequate. The serious basis for objection is that Myers is not entitled to look to this estate for compensation because he was not appointed by this court to represent the debtors.

■ The general rule is that an attorney representing a debtor must be appointed by the court before he is entitled to an award of attorney's fees by the court. 11 U.S.C. § 327(a); B.R. 2014; 2 Collier on Bankruptcy (15th ed.) § 327.02. We will, in appropriate circumstances, appoint counsel for a debtor after work is performed. *See, In re Tom's Variety and Hardware, Inc.,* 30 B.R. 298 (Bankr.S.D.Ohio 1983). In this case, however, debtors never have made application for appointment of Myers as their attorney. We must decide whether, absent application by the debtor or order of the court, Myers may be awarded a fee for his services from this estate. As a starting point, we refer to the pertinent statute, 11 U.S.C. § 503(b)(1)(A), which provides for an allowance of administrative expenses for:

... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

\*      \*      \*      \*      \*      \*

Immediately apparent in this provision of the law is that it relates only to services rendered "after the commencement of the case". We therefore cannot permit compensation to Myers from this bankruptcy estate as an administrative claimant for the 73.15 hours he devoted to the affairs of debtors before the bankruptcy case was filed. With respect to this, he is a pre-filing claimant, and his proof of claim will be dealt with on that basis. That then leaves the question of whether he can be compensated for the services he rendered to debtors in connection with the closing of the sale which occurred after the commencement of the case.

■ While some courts apply a per se rule which prohibits the award of attorney fees in the absence of an order of appointment by the Bankruptcy Court, there is respectable authority permitting a Bankruptcy Court to exercise its sound discretion in approving an award of fees to an attorney who has provided services without securing an order from the court. In *In re Wallingford Fruit House, Inc.,* 35 B.R. 426, 427 (D.C.Maine 1983), the District Court said:

In the companion to this case, *In re Roger N. Cormier,* 35 B.R. 424 (D.Me. 1983), this Court has determined that the bankruptcy court has the equitable power to exercise its discretion and award attorney's fees where there has been no prior approval of employment upon a proper showing. The debtor must show at least that the estate has benefited from the attorney's services and that there was no conflict of interest that would have prevented the appointment of the attorney in the first instance. \*  \*  \*

See also *In re Lindo's Tours USA, Inc.,* 55 B.R. 475, 478 (Bankr.M.D.Fla.1985).

In the case before us, we are satisfied that Myers rendered a clear benefit to the estate. He had long represented the debt-

ors prior to the bankruptcy filing and was familiar with them in their operations. Moreover, he had participated in an earlier effort to consummate a sale of the business. His knowledge and documents were utilized in making it possible to complete the sale which finally took place, on a very short time schedule.

In addition to the necessity of showing a benefit, *Wallingford Fruit House* requires a showing that there was no conflict of interest that would have prevented the appointment of the attorney in the first instance. In this connection, we deem 11 U.S.C. § 327(e) relevant. In that subparagraph, employment of an attorney is expressly authorized for a "special purpose, other than to represent the trustee in conducting the case ... if in the best interest of the estate." Here, Myers was the attorney for the debtors for a considerable period of time prior to the filing of the bankruptcy. Nothing has been shown suggesting that Myers holds any interest adverse to the debtors or the estate with respect to the sale of the business, the matter on which Myers was employed here. We conclude, therefore, that the criteria suggested in *Wallingford Fruit House* have been met.

Since that is the case, and since Myers rendered services at the request of the debtors, services which made it possible for a sale to be consummated in a very short time frame, as a matter of equity we believe that Myers should be allowed an attorney's fee from the estate in these consolidated cases.

As we have stated, Myers shows that he rendered 26.05 hours of service post-filing. For this he requests compensation at the rate of $250.00 an hour. He testified that this hourly rate was justified because he was obliged to carry high insurance coverage. The exposure to which he is subject in his practice in the rendering of opinion letters regarding very substantial matters involving large sums of money necessitates such coverage. While such a high hourly rate may be warranted in representation where Myers is the principal attorney, that is not the case here. Fur-

ther, in the case before us, it is not clear that the rendering of such opinions was the reason for Myers' retention as attorney. Rather does it appear that he was asked to participate with the court-appointed bankruptcy counsel because of his long-standing familiarity with the affairs of the debtors, and his recent experience in preparing for the bulk sale which was not consummated. Under these circumstances, we fix the sum of $4,000.00 as a reasonable attorney's fee for Myers. Myers requests also the amount of $546.01 as expenses advanced. This record does not establish to what extent these claimed expenses were rendered post-filing and, accordingly, they may not be allowed.

Accordingly, the objection of Gidding-Union is overruled and an attorney's fee in the amount of $4,000.00 is allowed to Myers.

So Ordered.