**In re SAINT JOSEPH'S HOSPITAL, Debtor.**

**Bankruptcy No. 88–14005S.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 26, 1989.

Supplemental Memorandum Aug. 17, 1989.

Joseph A. Dworetzky, Drinker Biddle & Reath, Philadelphia, Pa., for debtor.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

Lewis H. Gold, Adelman Lavine Gold & Levin, Philadelphia, Pa., for Mediq.

S. Fain Hackney, Duane, Morris & Heckscher, Philadelphia, Pa., for Bank Hapoalim.

Rosetta B. Packer, Klehr, Harrison, Harvey, Branzburg, Sellers & Weir, Philadelphia, Pa., for Fidelity Bank.

Andrew S. Price, Bazelon, Less & Price, Philadelphia, Pa., for debtor.

Paul R. DeFilippo, Crumy, Del Deo, Dolan, Griffinger & Vecchioine, Newark, N.J., for Felician 1900 Sisters.

J. Gregg Miller, Pepper Hamilton & Scheetz, Philadelphia, Pa., for Bond Trustee.

Pace Reich, Pincus, Bressler, Hahn, Reich & Weinberg, Philadelphia, Pa., for Creditors' Committee.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

Our accompanying Order of this date has caused us to make rather deep cuts in the amounts requested in the Interim Application of the Debtor's counsel, Drinker Biddle and Reath (hereinafter "the Applicant") for legal fees in the amount of $452,826.25 and reimbursement of costs in the total sum of $18,994.90. We are awarding the Applicant legal fees of $340,637.75 and costs of $9,634.11. Because the reductions are rather substantial, a brief explanation is provided.

Despite its length, we have reviewed the Application line-by-line and noted each of our specific disallowances directly on the original copy of the Application, following the time-honored procedure of this court. *See In re Mayflower Associates*, 78 B.R. 41, 44 (Bankr.E.D.Pa.1987).

The reason for a very large portion of the disallowances is due to the fact that the application seeks a large amount of compensation for pre-petition services. The initial $59,596.25 itemized in the Application was exclusively for pre-petition services. Other, additional requests for compensation for pre-petition services which were not itemized at the outset nevertheless crept in. *E.g.*, J.A. Dworetzky, pgs. 33–34, includes another 50.75 hours, amounting to over $10,000 of additional pre-petition services. We called this to the Applicant's attention and, in a letter of June 16, 1989, the Applicant, per Mr. Dworetzky, cited to us the following cases allegedly supporting allowance of pre-petition services: *In re Four Star Terminals*, 42 B.R. 419, 432 (Bankr.D.Alas.1984); *cf. In re Texaco, Inc.*, 90 B.R. 622, 630–31 (Bankr.S.D.N.Y., 1988); *In re Sutherland Associates*, 14 B.R. 55, 57 (Bankr.D.Vt.1981); *In re Med General,*

*Inc.*, 17 B.R. 13, 14 (Bankr.D.Minn.1981); *see also In re Rorabaugh*, 62 B.R. 623, 627 (Bankr.D.Kan.1986).

As the symbols *"cf."* and *"see also"* indicate, only the first case cited, *Four Star*, actually grants compensation to a debtor's counsel for pre-petition services. Moreover, in that case, a $21,000 request was reduced to $6,037.50. The *Texaco* decision includes only supportive dictum, 90 B.R. at 630–31. *Sutherland* involves only the issue of whether a debtor's counsel must turn over a pre-petition retainer. *Med General* and *Rorabaugh* involve applications under 11 U.S.C. § 503(b)(3), which, as we indicate below, is a significant distinguishing factor.

Meanwhile, there are several cases directly to the contrary. *In re Kahler*, 84 B.R. 721, 722–24 (Bankr.D.Colo.1988); *In re B. Miller, Inc.*, 76 B.R. 621, 623 (Bankr. S.D.Ohio 1987); and *In re George Worthington Co.*, 76 B.R. 605, 607 (Bankr.N.D. Ohio 1987).

■ We find the reasoning of *B. Miller, supra*, particularly apt. Professionals are generally not entitled to compensation prior to their appointment by the court. *See*, 11 U.S.C. §§ 1107(a), 327(a); *In re Greater Pottstown Community Church of the Evangelical Congregational Church*, 80 B.R. 706, 709–10 (Bankr.E.D.Pa.1987); and 2 COLLIER ON BANKRUPTCY, ¶ 327.02, at 327–6 to 327–14 (15th ed.1989). The only exception is if the professional applies for and satisfies the extraordinary circumstances necessary for appointment *nunc pro tunc. See In re F/S Airlease II v. Simon*, 844 F.2d 99, 105–08 (3d Cir.1988); *In re Arkansas Co.*, 798 F.2d 645, 648–51 (3d Cir.1986); and *In re TM Carlton House Partners, Ltd.*, 93 B.R. 875 (Bankr.E.D.Pa. 1988). No application for *nunc pro tunc* appointment was ever made by the Applicant here. Furthermore, it is not clear, given the narrow circumstances in which the Third Circuit has held that *nunc pro tunc* appointment is allowable, that such appointment could *ever* be effective as of a date that is pre-petition.

Neither the *Four Star* nor the *Texaco* opinions cited *supra* consider the fact that

pre-petition services would be rendered pre-appointment. We are inclined to believe that they overlooked it.

The sequence of appointment before compensation is significant in distinguishing the cases cited by the Applicant which were decided under § 503(b)(3). In such circumstances, appointment is not necessary and the requirements of § 327(a) are inapplicable. *See In re Washington Lane Associates,* 79 B.R. 241 (Bankr.E.D.Pa. 1987).

Therefore, especially since the Applicant has not been appointed *nunc pro tunc,* compensation for pre-petition services must be disallowed.[1]

■ The other disallowances are less remarkable, although they are attributable to other pervasive weaknesses in the Application. First, the Applicant seeks an inordinate amount of compensation for intra-office communications. Many of the requests for time spent in such extensive conferencing is reduced. *See Blum v. Witco Chemical Corp.,* 829 F.2d 367, 378 (3d Cir.1987); *In re Metro Transportation Co.,* 78 B.R. 416, 418 (Bankr.E.D.Pa.1987); *Mayflower, supra,* 78 B.R. at 46; and *In re Amatex Corp.,* 70 B.R. 624, 626 (Bankr.E. D.Pa.1985). *But compare In re National Paragon Corp.,* 87 B.R. 11, 13 (Bankr.E.D. Pa.1988) (alleged across-the-board reduction of compensation for intra-office conferences not appropriate where, unlike here, the time in such conferences was not excessive). Secondly, the Applicant is prone to "lumping" and inadequate descriptions of services. *See Metro Transportation, supra,* 78 B.R. at 418; and *Amatex, supra,* 70 B.R. at 627–28. These will always result in reductions, if not complete denial, of the specific requests displaying these deficiencies.

Finally, we were compelled to reduce the requests for reimbursements for costs because of the Applicant's almost total failure to comply with the procedural requirements set forth in *Metro Transportation, supra,* 78 B.R. at 420; and *Mayflower, supra,* 78 B.R. at 47–48. We allowed a

$6,000 "compromise figure," *compare Metro Transportation,* 78 B.R. at 419, for undocumented Delivery Services, Duplicating, Copies, Mailing, and Telephone totalling $8,241.09. As we indicated in the past, secretarial overtime, meals, *see In re Motor Freight Express, Inc.,* 80 B.R. 44, 47–48 (Bankr.E.D.Pa.1987), and local transportation are not compensable. *See Metro Transportation,* 78 B.R. at 420.

We also note two other pervasive deficiencies in the Application:

1. Although well over $100,000 is requested, the time spent by each professional on each aspect of the case is not indicated, as required by Local Rule 2002.-3(b)(3). Ordinarily, we would not even review an application which fails to comply with this requirement, and hence will not tolerate disregard of this Rule in future submissions by the Applicant.

2. The smallest denomination of time in the Application was .25, or a quarter-hour, rather than the normal .1, or one-tenth of an hour. This practice suggests the opportunity for padding on short tasks, and causes us to often make an overall downward adjustment. We did not do so here, as our other reductions were so substantial.

In Mr. Dworetzky's letter of June 16, 1989, the Applicant requests the opportunity to amend its Application to correct some of the perceived deficiencies included therein. It should be recalled, in this regard, that the instant submission is only an *interim* fee application. As a result, our order allowing it in part only is clearly interlocutory, and eminently subject to revision at the close of the case. Although given the relatively smooth course this case has taken, we were surprised at the magnitude of the Applicant's fee request, we also would be remiss if we failed to commend the excellent service which the Applicant has provided to a debtor which, like a previous debtor before us, provides an extremely important, high-quality service to the vast number of medically needy in our com-

---

1. For this reason, we are also obliged to deny that portion of the Application of the Debtor's service company, Heffler & Co., for pre-petition services.

munity, *see In re St. Mary Hospital*, 86 B.R. 393, 394, 396 (Bankr.E.D.Pa.1988), in the face of a time of retrenchment of financial assistance to such institutions by the federal government. All of these factors and any other which the Applicant wishes to raise will be considered when we have given plenary reconsideration of a final application of the applicant for compensation at, hopefully, the time of successful reorganization of this worthy Debtor. Thus, there is no great cause for resubmission of this Application at this juncture.

We are accordingly entering the Order described in the first paragraph of this Memorandum.

## ORDER AUTHORIZING INTERIM PAYMENT OF LEGAL FEES AND REIMBURSEMENT OF EXPENSES

AND NOW, this 26th day of June, 1989, upon application of Drinker Biddle & Reath for interim payment for fees, it is hereby

ORDERED, that the application of Drinker Biddle & Reath for interim payment of legal fees and reimbursement of expenses be and it is hereby is GRANTED in the amount of $340,637.75 for legal fees and $9,634.11 for reimbursement of expenses, and such sums shall be paid by the debtor on an interim basis.

## SUPPLEMENTAL MEMORANDUM

On July 6, 1989, Drinker Biddle and Reath (hereinafter "the Applicant"), counsel for the Debtor in this Chapter 11 case, filed a motion pursuant to Bankruptcy Rule (hereinafter "B.Rule") 9023 and Federal Rule of Civil Procedure 59(e) requesting that (1) we amend our Order of June 26, 1989, granting it interim compensation, pursuant to 11 U.S.C. § 331, to include compensation for pre-petition services, which we had expressly excluded from the sum awarded in that Order; and (2), if we were not inclined to grant this relief, that we permit the Applicant to take an interlocutory appeal of that issue only to the district court.

It will be recalled that, before we entered our Order of June 26, 1989, we advised the Applicant of our reluctance to approve its very large and therefore unique request to be compensated in an amount in excess of $70,000 from the estate for pre-petition services. The Applicant submitted a letter in support of its request dated June 16, 1989, and we carefully reviewed same before entry of our Order of June 26, 1989. After a hearing on the B.Rule 9023 motion on August 9, 1989, the Applicant was granted permission to make a further submission. We allowed it to do so and gave the matter full reconsideration despite our usual reluctance to hear motions to reconsider compensation awards. *See In re Metro Transportation Co.*, 78 B.R. 416, 417 (Bankr.E. D.Pa.1987), and cases cited therein.

We have carefully reviewed the additional authorities which the Applicant contended supported its position, *e.g.*, *Kressel v. Kotts*, 34 B.R. 388, 391–92 (D.Minn.1983); *In re Whitman*, 51 B.R. 502, 506 (Bankr.D. Mass.1985); *In re Roberts*, 46 B.R. 815, 849 (Bankr.D.Utah 1985), *aff'd in part and modified in part, on other grounds*, 75 B.R. 402 (D.Utah 1987); and *In re Johnson*, 21 B.R. 217, 218 (Bankr.D.D.C.1982). However, we note that, except for *Kressel*, each of these cases addresses the issue of awards for pre-petition services in rather loose statements which are at best dictum. Compensation was denied or allowed in a very modest amount in all of these cases.[1] Moreover, in *Kressel*, the court allowed counsel who abandoned his clients to keep a portion ($1,000 per case) of sizable *retainers* ($1,800 to $5,000), which the court determined was the reasonable value of counsel's pre-petition services. None of these cases, therefore, provided what the Applicant seeks here: full compensation for pre-petition services considerably in excess of its pre-petition retainer of $25,000 from assets of the Debtor's estate.

In its rather lengthy Memorandum of Law, the Applicant makes no effort to distinguish the cases cited at page 417 of our Memorandum of June 26, 1989, which

---

**1.** It was denied in all but *Whitman,* where the court allowed compensation for services of

$500, plus $134 costs, for post-petition services only.

have squarely rejected efforts similar to that attempted by the Applicant here. The Applicant did not cite any case arising in the Third Circuit which contains even so much as dictum in favor of allowing compensation from the estate for pre-petition services. This is significant because, here, the Court of Appeals has repeatedly narrowed the scope of circumstances in which pre-appointment services can be compensated from estate funds. *See, e.g., In re F/S Airlease II v. Simon,* 844 F.2d 99, 105–08 (3d Cir.1988), and other cases cited at page 417 of our previous Memorandum. Decisions such as *Airlease* are not based upon a weighing of the impact of broader tolerance of *nunc pro tunc* applications for compensation against the willingness of professionals to become involved in bankruptcy cases, as the Applicant asks us to do in considering its arguments here. We are therefore reluctant to do so. We doubt that our decision represents a change of position which could alter behavior of a debtor's professionals because of our observation that the magnitude of the request here appears unique in this jurisdiction and, apparently, nationally. Our decision is therefore not a departure from established bankruptcy procedure; the Debtor's request is.

At the close of its latest submission, the Applicant states that we should "in any event ... permit Applicant to apply its retainer against the pre-petition time." Our review of the original Application and the other submissions of the Applicant thereafter cause us to conclude that this is the first mention of how the $25,000 retainer, which the Applicant apparently has been holding in escrow, should be applied. The Application sought full reimbursement of almost $472,000, with no mention of a reduction of the retainer from this sum. Except for stating that the retainer was paid "before November 15, 1988," the date of filing, the Applicant does not indicate when it was paid, to what the parties agreed to allocate it, or how we should treat it in deciding the Application. The retainer was therefore never mentioned in our previous Memorandum nor our Order,

and we had no intention of implicitly deciding what should be done with it.

Since the Applicant now apparently requests us to address this issue, we shall do so. Consistent with our statements in an unpublished Adjudication in *In re Railroad Dynamics, Inc., A. Stucki Co. v. Morris & Adelman, P.C.,* Bankr. No. 84–00869S, Adv. No. 88–0878S, slip op. at 4, 1988 WL 87726 (Bankr.E.D.Pa. August 22, 1988), we conclude that the Applicant is entitled to deduct, from the $25,000 retainer, compensation for services and costs which arose between the date of payment of the retainer and the date of the filing of the Debtor's bankruptcy case and retain the difference (or retain it all if the difference is a negative number). *See In re Matis,* 73 B.R. 228, 234–35 (Bankr.N.D.N.Y.1987). We do not believe that pre-petition services rendered prior to payment of the retainer can be compensated therefrom because a retainer is, by definition, compensation for services to be performed in the *future. See Handelman v. Olen,* 24 Misc.2d 401, 205 N.Y.S.2d 411, 413 (New York Co.Sup. Ct.1960); *Severance v. Bizallion,* 67 Misc. 103, 121 N.Y.S. 627, 629 (Manhattan Co. Sup.Ct.1910); *Northumberland County Controller's Report,* 72 D. & C.2d 593, 600 (Northumb.Co.C.P.1950); and BLACK'S LAW DICTIONARY 1183 (5th ed. 1979).

We cannot make any definitive statement on the propriety of the Applicant's retention of the retainer because we do not know precisely when it was paid or to what services it was to be allocated. We might add that we are not inclined to raise any issue about the propriety of the Applicant's retention of this sum in this context *sua sponte,* despite our power to do so under 11 U.S.C. § 329(b). We do not embrace the conclusion of *In re Burnside Steel Foundry Co.,* 90 B.R. 942, 944 (Bankr.N.D.Ill. 1988), that retainers are generally property of the estate which can be retained only after application to do so. *See* H. Adelman & H. Merens, *Burnside: A Clear and Present Threat to the Availability of Debtor Representation,* NORTON BANKR.L.ADVISOR, 1989–No. 6, (June, 1989), at 1. The concerns of the *Burnside* court are not applicable here, as it is clear

that the Applicant performed total services in the case valued well in excess of the retainer received by it.

Finally, we turn to the Applicant's request that we grant it leave to file an interlocutory appeal on the issue of its right to recover compensation for pre-petition services from the estate. The Applicant acknowledged in a colloquy on August 9, 1989, that no permission from this court is required to prosecute an interlocutory appeal, and that it is only obliged to address to the district court any request for leave to hear an appeal from this interlocutory order. *See* 28 U.S.C. § 158(a); *In re Bertoli*, 812 F.2d 136, 138–40 (3d Cir.1987); and 1 COLLIER ON BANKRUPTCY, ¶ 3.03[d][i], at 3–185 to 3–187 (15th ed. 1989). *Compare* 28 U.S.C. § 1292(b) (certification of district court is needed to appeal most of its interlocutory decisions to the Court of Appeals). The request to us was apparently made in the interests of deference and courtesy.

Despite our appreciation of the Applicant's interests in so doing, having been invited to express our view as to the appealability of this order, we express our opinion that this order is not only clearly interlocutory, but also is of a type of which the district court should not entertain an appeal. As our initial Memorandum made clear, an award of interim compensation is a mere conservative advance to counsel ahead of distribution to other administrative claimants, which is reviewable in all aspects by this court at the time of presentation of a final application for compensation, usually immediately after confirmation. Interim compensation is thus generally a form of "partial payments ... on account of an ultimate final allowance." 2 COLLIER *supra*, ¶s 331.01, 331.03, at 331–2, 331–8. It is for this reason that Courts of Appeals have regularly dismissed such appeals for lack of subject matter jurisdiction. *Id.*, ¶ 331.03 at 331–10 to 331–11 & n. 4c and cases cited therein. *See also In re Four Seas Center, Ltd.*, 754 F.2d 1416, 1418–19 (9th Cir.1985). The local district court has recognized this and dismissed such appeals, *see In re Crisis Intervention Network, Inc.*, C.A. No. 89–1746 (E.D.Pa.

April 10, 1989) (KATZ, J.); and *In re Grant Broadcasting of Philadelphia, Inc.*, C.A. No. 88–3974 (E.D.Pa. July 21, 1988) (BECHTLE, J.). Therefore, we question whether any appeal from an interim fee award of this court to the district court is ever permissible. Certainly, given the workload of counsel for the Debtor in this case and of the courts, it would appear to us an unadvisable expenditure of time.

We will therefore enter an Order denying the Applicant's B.Rule 9023 motion and not alter our Order of June 26, 1989, except to the extent that the Applicant's rights to its retainer are clarified hereby.