**In re Paul P. MATIS, Jr., Charlotte A. Matis, Debtors.**

**Bankruptcy No. 86–00478.**

United States Bankruptcy Court, N.D. New York.

Jan. 21, 1987.

See also, Bkrtcy., 74 B.R. 363.

Brett W. Martin, Utica, N.Y., for debtors.

Daniel S. Cohen, P.C., Utica, N.Y., for Leon J. DeBernardis.

Herzog, Nichols, Engstrom & Koplovitz, P.C., Albany, N.Y. (Charles J. Tallent, of

counsel), for Cent. Nat. Bank of Canajoharie.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court has before it the first interim application of Brett W. Martin, Esq. ("Martin") one of the attorneys for the Debtors, requesting approval for fees and disbursements incurred during the period March 24, 1986 through June 24, 1986. Also considered is the Objection to Application for Interim Allowance submitted by Central National Bank, Canajoharie ("CNB"), the holder of a secured claim; CNB did not appear in support of its objection at the hearing on Martin's application.

The Court must of necessity consider as well the Debtors' pending motion seeking an Order directing Debtors' co-counsel, Leon J. DeBernardis ("DeBernardis") to return his one-half share of $2,400.00 of a pre-petition retainer.

The Court considers both the application and motion pursuant to Sections 327, 328, 329, 330, 331 and 504 of the Bankruptcy Code, 11 U.S.C. §§ 101–151326 ("Code"), as well as Fed.R.Bankr.P. 2016 and 2017.

Dealing first with Debtors' motion to compel DeBernardis' repayment of his share of the pre-petition retainer, DeBernardis directs the Court's attention to Code § 504(b)(1). That section authorizes the sharing of compensation received by a member, partner, or regular associate in a professional association, corporation or partnership pursuant to Code § 503(b)(2) or 503(b)(4) with another member, partner or regular associate in such association, corporation or partnership. DeBernardis alleges in his Reply dated August 6, 1986, that at the time he received the retainer, Martin and he were conducting business as a "professional association in which they were regular associates". Therefore, DeBernardis argues, Code § 504(b)(1) authorized a fee splitting arrangement with Martin.

Code § 504 represents a significant departure from prior bankruptcy law dealing with the sharing of compensation. Section 62 of the Bankruptcy Act of 1898, as amended, ("Act") contained the pre-Code attitude of Congress toward sharing of compensation.

Generally stated, the sharing of compensation between professionals in a bankruptcy case was not denounced except in a case where one of the professionals simply referred or forwarded the bankruptcy case to another professional who thereafter rendered all of the services. However, an exception was made in the case of an attorney who was even permitted to share compensation with "a partner or a forwarding attorney-at-law" who presumably contributed no services to the bankrupt. *See* 3 COLLIER ON BANKRUPTCY, ¶ 504.01, 504–3 (15th ed. 1986).

In 1973, Rule 219 of the former Rules of Bankruptcy Procedure was enacted, with subsection (d) thereof placing a significant restriction on the application of Act § 62. Former Rule 219(d) provided in part

> This rule does not prohibit an attorney or accountant from sharing his compensation as trustee, receiver, attorney or accountant with a member or regular associate of his firm, or from sharing in the compensation received by his firm, or by any other member or regular associate thereof, and does not prohibit an attorney for a bankrupt or for a petitioning creditor from sharing his compensation for services rendered with any other attorney contributing thereto.

It thus became apparent that a fee sharing arrangement between attorneys wherein one party simply referred the case to the other and performed no actual services was now not entitled to share in any compensation paid by the bankrupt. *See*, 3 COLLIER ON BANKRUPTCY, *supra*, ¶ 504.01 at 504–4.

Clearly, were Act § 62 and former Rule 219 applicable to this case, the relationship between Martin and DeBernardis would be irrelevant and the sharing of the retainer permissible since admittedly both attorneys rendered some services to the Debtors prepetition. In enacting the Code in 1978,

Congress indicated an intent to be "less generous" in its treatment of the sharing of compensation in bankruptcy cases. *See,* 3 COLLIER ON BANKRUPTCY, *supra,* ¶ 504.02 at 504–8.

Code § 504(a) prohibits all sharing of compensation received pursuant to Code §§ 503(b)(2) and 503(b)(4), except under the limited exceptions outlined in subsection (b)(1) and (2) thereof, and former Rule 219 has been superceded by Fed.R.Bankr.P. 2016. The new rule requires any person seeking compensation from a debtor's estate to disclose any payments previously received by or promised to that person, the source of the compensation and whether the compensation has been shared or there exists an agreement to share, together with the details of that sharing or proposed sharing. Fed.R.Bankr.P. 2016 also requires the debtor's attorney to file a statement with the court prior to the first meeting of creditors, setting forth the pre-petition amount paid or agreed to be paid by the debtor to the attorney; if the attorney has agreed to share that compensation with any other person, the details of that agreement must be disclosed. It is significant to note that if the sharing of compensation has been made or is to be made with a "member or regular associate of the attorney's law firm", no such detailed agreement need be set forth.

Turning again to Code § 504, it is clear that Congress intended to prohibit altogether the sharing of compensation in a bankruptcy case except where the sharing occurred between "a member, partner or regular associate in a professional association, corporation or partnership," or between attorneys for petitioning creditors in an involuntary case, so long as all of the attorneys actually contributed to the services rendered or expenses actually incurred. Thus, the practice permitted under former Rule 219 which allowed the sharing of compensation by attorneys, regardless of whether they were members or associates of the same firm, so long as they actually contributed services or expenses to the bankruptcy, is now prohibited by Code § 504. The only exception is where the attorneys represent petitioning creditors in

an involuntary case. Code § 504(b)(2). *See also,* 3 COLLIER ON BANKRUPTCY, *supra,* ¶ 504.3 at 504–16 & 17.

In the instant case, the sharing of compensation between DeBernardis and Martin occurred prior to the filing of the Debtors' petition and presumably a question arises as to whether the prohibitions of Code § 504 are applicable. As indicated, Code § 504 applies to compensation paid pursuant to Code § 503(b)(2) and (b)(4); for purposes of the case, we need only focus on Code § 503(b)(2).

■ Compensation paid pursuant to this section is compensation which a court may award pursuant to Code § 330. A review of Code § 330 indicates the Court may award reasonable compensation to the Debtors' attorney subject to the provisions of Code § 329, which authorizes the Court to examine a debtor's pre-petition transactions with his attorney. Thus, it must be concluded that Code § 504 extends its prohibition against the sharing of any attorney's fees which may be examined by the court pursuant to Code § 329, i.e. fees paid or agreed to be paid within one year prior to the filing of the petition.

■ As was previously indicated, Congress sought to generally prohibit the sharing of compensation or fee splitting among attorneys in a bankruptcy context.

The section [Code § 504] manifests Congress' purpose to preserve the integrity of the bankruptcy process to the end that, among others, lawyers attend to their duty as officers of the bankruptcy court, which they clearly are, rather than to treat their interest in bankruptcy matters as matters of traffic.

While former Rule 219(d) allowed an attorney for a petitioning creditor or an attorney for a bankrupt to share compensation with another attorney outside his own firm who had contributed to the case, under Section 504 of the 1978 Code, only a creditor joining in an involuntary petition may share compensation in the matter. In this respect the Code's policy is more restrictive than was former law.

232

3 COLLIER ON BANKRUPTCY, *supra*, ¶ 504.02 at 504–8 & 9. Thus, Congress authorized sharing of compensation between a "member, partner, or regular associate in a professional association, corporation, or partnership." The Code does not define, however, what is meant by these terms, although for purposes of the instant motion, we need only concern ourselves with a "professional association" since neither DeBernardis nor Martin claim their relationship to be that of a partnership or professional corporation. A review of other provisions of the Code and Bankruptcy Rules relating to the terminology and requirements of Code § 504 do not utilize the specific phrase "professional association".

Code § 101(3) defines an "attorney" as an "attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law". Fed.R. Bankr.P. 2016 utilizes terms such as "member or regular associate of a firm of lawyers", (Subsection (a)) and "member or regular associate of the attorney's law firm". (Subsection (b)). Fed.R.Bankr.P. 9001(6) defines a "firm" as a "partnership or professional corporation of attorneys or accountants", while subsection (9) thereof defines a "regular associate" as an "attorney regularly employed by, associated with, or counsel to an individual or firm."

All of these provisions connote a concept based upon an identifiable legal relationship between the persons seeking to share the compensation such as that of employer/employee, partners, partner/associate, corporate officer, director or stockholder of a corporation.

Thus, it is to be assumed that when Congress enacted Code § 504 to permit a sharing of compensation, it intended that the term "professional association" refer to a recognized legal entity, under applicable state law, the members or employees of which have some identifiable legal relationship to one another, a relationship which would prevent the abuse inherent in fee splitting between unrelated professionals which Code § 504 is intended to prevent. Absent any specific definition in the Code of the term "professional association", the

Court must look to state law as well as the factual indicia of the relationship between Martin and DeBernardis. Nowhere within the laws of the State of New York does the Court find an entity identified as a "professional association" which is permitted to engage in the practice of law.

In New York, an attorney may engage in the practice of law as a sole practitioner, as a partner in a partnership, as a member of a professional corporation established pursuant to Article 15 or 15–A of the New York Business Corporation Law, §§ 1501–1533 (McKinney 1986), or as an associate or employee of such sole practitioner, partnership or professional corporation. The term "associate" as used in the New York Code of Professional Responsibility DR 2–102, denotes "[t]hose lawyers who are working for an individual lawyer or a law firm". *See*, New York Code of Professional Responsibility DR 2–102(A)(4), N.Y.Judiciary Law App. p. 391, n. 8 (McKinney 1975).

Nowhere is there any indication that attorneys in New York may practice law as a "professional association". In fact, New York Judiciary Law § 495 (McKinney 1983) prohibits the practice of law by corporations (other than a corporation established pursuant to Article 15 and 15–A of the Business Corporations Law) and voluntary associations.

Turning to the actual relationship between DeBernardis and Martin, the Court cannot conclude that their relationship was anything other than that of office sharing.

DeBernardis alleges that he leased an office for the practice of law at 288 Genesee Street, Utica, New York and that in March 1986, he permitted Martin to occupy a portion of his suite of offices, share his waiting room, his parking space at the rear of the building, and his copy machine and supplies, in return for a "minimal rental" of $175.00 per month. See DeBernardis Reply dated August 6, 1986, ¶ 6A (hereinafter "DeBernardis Reply"). Additionally, DeBernardis contends that he allowed Martin to utilize some of his office furniture and partially remodeled the office space to be occupied by Martin. DeBernardis Reply

¶ 6B.  It further appears that at least part of the motivation for DeBernardis entering into this arrangement with Martin was to enable DeBernardis to refer some of his legal matters to Martin.  However, DeBernardis acknowledges that as in Debtors' case, he and Martin would split the fee on any such referred matter equally.  See De-Bernardis Reply ¶ 6C.[1]  Finally, DeBernardis contends that due to certain violations of the agreement by Martin, their "professional association" came to an end sometime prior to July 1, 1986, approximately four months after it began and that even though he remained ready, willing and able to perform services on behalf of the Debtor, with the exception of some 7½ hours, all of the services rendered to Debtors were rendered by Martin.  DeBernardis Reply ¶ 6D, E.

The Debtor, Paul P. Matis, Jr., submitted an affidavit in which he contends that he was referred to DeBernardis by his regular attorney.  Upon meeting DeBernardis, he was informed that both DeBernardis and Martin would be working on his Chapter 11 case, since Martin was knowledgeable in Chapter 11.  Affidavit of Paul P. Matis, Jr., sworn to August 5, 1986, ¶ 3 (hereinafter "Matis affidavit").

The Debtor further alleges, without contradiction, that he was informed by Martin that he and DeBernardis were not partners nor were they associated in any way, but rather they simply shared office facilities; furthermore, that as soon as the Chapter 11 case was filed, all contact with DeBernardis ended and thereafter the Debtors were represented and counseled solely by Martin.  Matis affidavit, ¶ 14.

An examination of the documents filed with the Court fail to indicate any relationship between DeBernardis and Martin other than that of independent co-counsel.

Debtors' Statement of Affairs filed on April 23, 1986, at item 20(c), recites that

Martin and DeBernardis were to be paid at the rate of $70.00 per hour and that they had already been paid a $5,000.00 retainer.  Both Martin and DeBernardis filed separate Disclosure Statements dated March 26, 1986, pursuant to Fed.R.Bankr.P. 2016, in which they acknowledged receipt of a $5,000.00 retainer which they were to "share equally (50%–50%)".  Nowhere in the Disclosure Statements do either Martin or DeBernardis indicate they are a professional association, corporation or partnership, and, presumably, that is why they disclosed the actual fee splitting arrangement in compliance with Fed.R.Bankr.P. 2016(b).

The Court also examined the affidavits of Martin and DeBernardis, sworn to on March 26, 1986 and submitted in support of the Debtors' Application dated March 27, 1986, seeking the Order signed by the Hon. Justin J. Mahoney, U.S. Bankruptcy Judge on April 2, 1986 appointing both Martin and DeBernardis as attorneys for the Debtors.  These documents fail to reveal a legal relationship between Martin and DeBernardis which would justify an exception to Code § 504(a).

Significantly, Judge Mahoney's Order of April 2, 1986 subjected the payment of the $5,000.00 retainer to the approval of the Court, and by virtue of an Order dated April 16, 1986, the case was transferred to the Utica Division of the Court.

While it is clear that were DeBernardis and Martin to have performed services jointly on the Debtors' behalf subsequent to their appointment on April 2, 1986, both would presumably be entitled to compensation upon submission to and approval by the Court of actual time records, it is just as apparent that their pre-petition fee sharing arrangement was in obvious violation of Code § 504(a).

---

1. It should be pointed out that this fee splitting portion of the arrangement, regardless of whether or not it ran afoul of Code § 504, may have violated New York State law.  *See Orenstein v. Albert,* 39 Misc.2d 1093, 1094, 242 N.Y. S.2d 505 (N.Y.Sup.Ct.1963), *aff'd.,* 20 A.D.2d 720, 247 N.Y.2d 563 (N.Y.App.Div.1964); *see* *also Clark v. Robinson,* 252 A.D. 857, 299 N.Y.S. 474 (N.Y.App.Div.1937); *Baylis v. Wood,* 248 A.D. 585, 287 N.Y.S. 372 (N.Y.App.Div.1936); New York Code of Professional Responsibility DR 2–107(A), N.Y.Judiciary Law App. p. 416 (McKinney 1975).

■ Having concluded that the pre-petition fee splitting arrangement between Martin and DeBernardis was in violation of Code § 504(a), the Court must fashion the appropriate remedy.

Former Rule 219(d) authorized the Court to deny compensation or enter such other order as would be appropriate in the circumstances when an improper sharing of compensation was uncovered. *See* 3 COLLIER ON BANKRUPTCY, *supra* ¶ 504.01 at 504-5.

While neither Fed.R.Bankr.P. 2016 nor Code § 504 specifically provide such an option to the Court, there is no reason to conclude that the Court does not still retain such discretion. In fact, Code § 329(b), relied upon by Martin, provides the Court with ample authority to order the return of fees paid by a debtor to his attorney pre-petition to the extent they are excessive.

In fashioning its order, the Court does not believe that either Martin or DeBernardis intended to mislead or otherwise deceive the Court as to their fee splitting arrangement, and that clearly they have not "flagrantly breached their fiduciary obligations to the bankruptcy court." *See Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463, 470 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed. 653 (1982).

DeBernardis alleges he performed some 7½ hours of work pre-petition on Debtors' behalf. This allegation is not controverted by either Martin or the Debtors. Under the circumstances, the Court believes DeBernardis should be permitted to retain the sum of $525.00 from his share of the tainted retainer, with the balance of $1,875.00 to be repaid to the Debtors.

■ Having reached this conclusion, the Court does not believe it necessary to consider Martin's arguments which rely upon application of Code § 329, except to observe that were the section applicable, an identical result would be reached.

■ Turning now to Martin's application for an interim fee, the Court notes this is counsel's first application for an interim fee, and covers the period March 24, 1986 through June 24, 1986 seeking a fee of $6,352.50.

Unquestionably, Code § 331 authorizes payment of an interim fee to a professional who renders post-petition services to the debtor following appointment pursuant to Code § 327. *Matter of Mansfield Tire & Rubber Co.,* 19 B.R. 125, 127 (Bankr.N.D. Ohio 1980); *In re Quick Release, Inc.,* 6 B.R. 713, 715 (Bankr.D.S.D.1980). Further, it is well settled in this Circuit that professional services rendered to a debtor post-petition but pre-appointment are not compensable except under limited circumstances, not applicable here. *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp), supra; In re American Express Warehousing Ltd.,* 525 F.2d 1012, 1016 (2d Cir.1975); *Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.),* 509 F.2d 1242, 1245-46 (2d Cir.1975); *In re Progress Lektro Shave Corp.,* 117 F.2d 602, 604 (2d Cir.1941); *General Motors Acceptance Corp. v. Updike, (In re H.L. Stratton, Inc.),* 51 F.2d 984, 988 (2d Cir.1931), *cert. denied,* 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576 (1932); *In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988, 992 (2d Cir.1931); *In re Eureka Upholstering Co., Inc.,* 48 F.2d 95, 96 (2d Cir.1931). Accordingly, the Court cannot consider 1¾ hours of services rendered by Martin between March 27, 1986 and April 2, 1986.

■ Martin's time records reflect a total of 80.25 hours expended between April 2, 1986 (the date of appointment) and June 24, 1986. While the services rendered appear compensable, the utilization of quarter hour increments in all cases is indicative of some inherent inaccuracy. For example, telephone calls are generally logged at no less than a quarter of an hour, while in-depth studies of law office procedures have indicated the average telephone call lasts less than 12 minutes. In light of the foregoing, the Court adjusts the total hours consumed to 75; utilizing the $70.00 hourly rate indicated by Martin, a total fee of $5,250.00 is approved.

■ The Court also approves for reimbursement, expenses incurred by Martin in the sum of $141.97. The photocopy expense of $83.00 is disallowed in accordance with Rule 8 of the Local Rules of Bankruptcy Practice for the Northern District of New York.

■ As in the case of DeBernardis, Martin received a total of $2,600.00 pre-petition, less the filing fee of $200.00, leaving an actual retainer paid in violation of Code § 504(a) of $2,400.00. Since Martin's time records indicate an expenditure of 8¾ hours pre-petition, again at an hourly rate of $70.00, $612.50 of the shared retainer was actually expended pre-petition. For the same reasons indicated in our analysis of Debernardis' participation in the unauthorized fee splitting agreement, the Court will permit Martin to retain the sum of $612.50. The balance of the retainer ($1,787.50) will be credited against the fee of $5,250.00 approved herein for services rendered to the Debtors post-petition.

■ In approving Martin's interim fee however, the Court is cognizant of CNB's objection insofar as it seeks to prohibit the use of the proceeds of its collateral to compensate Debtors' attorney. The law in this Circuit is well settled that professional fees in the nature of an administrative priority, Code § 503(b)(2) and (4), cannot supersede the rights of the holder of a secured claim, particularly where the secured creditor obtains a post-petition lien on the property of the debtor, out of which the professional fees are sought to be paid. *General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76–77 (2d Cir.1984); *see also Matter of Codesco, Inc.*, 15 B.R. 354 (Bankr.S.D.N.Y.1981).

The Debtor's case is distinguishable from *In re Flagstaff Foodservice Corp., supra,* in that CNB does not have post-petition security interest, and there is pending litigation before the Court involving the precise issue of the nature and extent of CNB's pre-petition security interest. Thus, to deny any interim compensation to Martin solely on the strength of the CNB objection would be inequitable and premature.

Therefore, having considered the CNB's objection, as well as the need to compensate all administrative expenses in the Chapter 11 case on a parity, the Court will direct immediate application of the amount to be paid back to the Debtors' by DeBernardis ($1,875.00) to the interim fee due Martin, with balance of the approved fee and disbursements ($1,587.50 plus $141.97) to be paid in six monthly increments from income of the Debtors generated from sources other than collateral allegedly securing CNB's claim. *See In re IML Freight, Inc.*, 52 B.R. 124, 139 (Bankr.D. Utah 1985).

In the event the nature and effect of CNB's security interest is determined adversely to CNB within six months, the Court will entertain Martin's application to seek an appropriate modification of this Order.

As a consequence of the foregoing, it is

ORDERED:

1. Leon J. DeBernardis, Esq. shall pay to the Debtors, within thirty days of the entry of this Order, the sum of $1,875.00.

2. Upon Debtors' receipt of the sum of $1,875.00 from Leon J. DeBernardis, Esq., the Debtors shall pay that amount to Brett W. Martin, Esq. in accordance herewith.

3. Debtors shall pay to Brett W. Martin, Esq. the sums of $1,587.50 and $141.97 (total $1,729.47), in equal increments over a period of six months from the date of entry hereof, said payments to be made from sources other than any collateral in which Central National Bank, Canajoharie claims a security interest.

4. In the event that within six months of the date of the entry of the Order the rights of Central National Bank, Canajoharie as a secured creditor, are finally determined, this Order may be appropriately modified.