**In re Marvin Leon WARNER, Debtor.**

**UNITED STATES of America, Appellant,**

**v.**

**MILLER, CASSIDY, LARROCA & LEWIN, Appellee.**

**UNITED STATES of America, Appellant,**

**v.**

**Robert L. HASTINGS, Jr., Appellee.**

**Nos. 90–57–Civ–Oc–14, 90–56–Civ–Oc–14. Bankruptcy No. 87–1682–BK–3P1.**

United States District Court,
M.D. Florida,
Jacksonville Division.

March 25, 1992.

Ann Reid, Marika Lancaster, David N. Geier, U.S. Justice Dept., Tax Div., Washington, D.C., for appellant.

R. Stan Mortenson, Miller, Cassidy, Larocca & Lewin, Washington, D.C., for appellee Miller, Cassidy, Larocca & Lewin.

Scott Alan Orth, Abrams, Anton, Robbins, Resnick & Schneider, Hollywood, Fla., for appellee Marvin Leon Warner.

### OPINION AND ORDER

SUSAN H. BLACK, Chief Judge.

These cases are before the Court on appeals by the United States, filed on April 10, 1990, challenging the bankruptcy court's award of attorneys' fees to special counsel.

### I. FACTS

The debtor in this case, Marvin L. Warner, filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 22, 1987, following his conviction in Ohio state court for three counts of securities fraud and six counts of aiding and abetting the transfer of bank funds without the authorization of the board of directors. The sentence included an order to pay restitution in the amount of $22 million and $250,000 for the costs of prosecution. The appellees, Miller, Cassidy, Larroca & Lewin [hereinafter "MCLL"] were retained by the debtor, with the approval of the bankruptcy court, to represent the debtor in various civil matters and the appeal of the criminal conviction. The bankruptcy court also authorized the debtor to retain appellee, Robert R. Hastings, Jr., as local Ohio counsel on these same matters.

On August 16, 1989, MCLL submitted a Final Application for Payment of Compensation to the bankruptcy court, requesting a total of $308,730.22 in fees and $49,445.22 in expenses. On August 28, 1989, Mr. Hastings submitted a Final Application for Payment of Compensation requesting $27,662.50 in fees and $2,784.43 in expenses. By orders dated January 10, 1990, the bankruptcy court allowed the fees and expenses in full for both petitions except $4,689.55 of MCLL's application which the court regarded as overhead.

### II. STANDARD OF REVIEW

"[A]n award or denial of attorney's fees in a bankruptcy proceeding will be reversed on appeal only if the bankruptcy judge abused his discretion. Such an abuse can occur only 'when the bankruptcy judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.' *In re U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981)." *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir.1988).

### III. ANALYSIS

The United States has raised four issues in these appeals, all of which question whether the Bankruptcy Court properly awarded attorneys' fees, out of the bankruptcy estate, to the debtor's criminal defense attorneys. The first issue, which is a threshold question for all of the others, is whether the bankruptcy court abused its discretion in awarding any attorneys' fees for the criminal appeal from the bankruptcy estate.

#### A.

On this threshold question, the United States asserts that the payment of a debtor's criminal defense counsel should never come from the coffers of the bankruptcy estate. In support, the government has advanced two arguments. First, that the employment of special counsel must be in the best interests of the estate and not for the personal benefit of the debtor. The United States argues that the employment of counsel to overturn a criminal conviction of the debtor can never meet this standard. Second, the government argues that "funding of criminal defense matters by the bankruptcy estate inappropriately interferes with the public's interest in the criminal justice system." Briefs of Appellant United States of America at 10, filed April 25, 1990. The logical starting point is the language of the statute.

The bankruptcy code provides that "[t]he trustee, with the court's approval, may employ one or more attorneys ... to represent or assist the trustee in carrying out the

trustee's duties under this title." 11 U.S.C. § 327(a). Furthermore, "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interests of the estate." 11 U.S.C. § 327(e). There is no specific distinction in the statute made for the employment of criminal defense counsel. "The bankruptcy court may authorize the employment of defense counsel if the criteria of either § 327(a) or § 327(e) are met, i.e., if the employment of defense counsel either assists the debtor in possession in carrying out his duties under Chapter 11 or is in the best interest of the estate." *Official Comm. of Disputed Litig. Creditors v. McDonald Inv., Inc.*, 42 B.R. 981 (N.D.Tex.1984) (citing *In re Tashof*, 33 B.R. 225 (Bankr.D.Md.1983)); *see also, In re Duque*, 48 B.R. 965 (S.D.Fla. 1984).

■ In the present case the bankruptcy court applied this legal standard and held that "[i]t is in the best interest of the estate that a debtor in possession remain at liberty in order that he manage the estate's affairs. Further, in this particular case, the benefit to the estate of challenging a judgment imposing a $22,250,000 liability upon the estate is obvious." Bankruptcy Court's Findings of Fact and Conclusions of Law on Final Application of Robert R. Hastings, Jr. For Payment of Compensation [hereinafter the "Bankruptcy Order"] at 4, filed April 9, 1990; see also Bankruptcy Court's Findings of Fact and Conclusions of Law on Final Application of Miller, Cassidy, Larroca & Lewin for Payment of Compensation, at 5, filed April 9, 1990. The Court finds that the bankruptcy court's findings of fact are not clearly erroneous, and, therefore, that court's decision was not an abuse of discretion.

In support of its first argument, the United States cites a number of cases which hold, *inter alia*, that bankruptcy estate funds should not be available to pay for defending objections to discharge or complaints to determine dischargeability of debts or to defend a debtor in alimony

litigation. These cases are not inconsistent with the holding here. The restitution order is a debt of the bankruptcy estate. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). The interest of the estate in the employment of defense counsel in an attempt to overturn a conviction which included a $22 million debt chargeable to the estate is, as the bankruptcy court put it, "obvious."

The government's second argument is based on the holding in *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982). In *Barnette*, the bankruptcy court had enjoined a county prosecutor and a complaining witness from pursuing a criminal prosecution. The Eleventh Circuit held that the bankruptcy judge had misjudged "the width of his turf." *Id.* at 1251. The court went on to say that "[t]here is a public interest in every good faith criminal proceeding, ..., which overrides any interest the bankruptcy court may have in protecting the financial interest of debtors." *Id.* From this statement, the United States reasons that if a bankruptcy court cannot enjoin a criminal proceeding it should not be able to authorize payment for representation in a criminal proceeding either.

There is a significant distinction between the holding in *Barnette* and the position the government asks this Court to take in this case. As the *Barnette* court pointed out there are, at least, two reasons to preclude a federal bankruptcy judge from enjoining state criminal prosecutions: First, the public interest in the criminal proceeding. Second, notions of federalism as espoused in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* Court held that a federal court should not enjoin a pending state criminal prosecution except under extraordinary circumstances. Neither of these problems exist here. The funding of adequate criminal representation from the bankruptcy estate simply does not interfere with the overriding public interest in criminal justice.

**B.**

The second issue raised by the government is whether there was adequate sub-

stantiation provided for the services rendered to justify the award. Bankruptcy Rule 2016(a) states that a "person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." In this circuit the bankruptcy court must determine the reasonableness of the fees, and that determination involves a three-step process. *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th Cir.1977).[1]

■ In the first step "each attorney seeking compensation should be required to file a statement which recites the number of hours worked and contains a description of how each of those hours was spent. [citation omitted]. If there are disputed issues of fact, an evidentiary hearing must be held to facilitate their resolution." *Id.* at 1299–1300. Secondly, the bankruptcy judge must assess the value of the services rendered. Finally, "the bankruptcy judge must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors listed in *Johnson* affected his decision." *Id.* at 1300.

The only part of this process challenged by the United States is the adequacy of the attorneys' documentation. The courts which have ruled on this question have enunciated differing standards concerning the degree of specificity required. Some courts have required detailed statements including not only the time spent on a task, but a description of the "factual particulars and the subject matter, and ... the relationship of the activity to the estate, the purpose of the activity, and the results for the estate." *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823 (Bankr.D.Vt.1987); *see also In re Shades of Beauty, Inc.,* 56 B.R. 946 (Bankr.E.D.N.Y.1986). All of these standards of specificity derive from the underlying principle that the application must be sufficiently detailed to allow the

bankruptcy judge to determine whether the requested compensation is for "actual, necessary services." 11 U.S.C. § 330.

■ The Court finds that the bankruptcy court's ruling that the fee applications were sufficiently substantiated is not clearly erroneous. None of the cases, cited by the appellant, which require more detail than was provided in this case involved fees for criminal defense representation. By its nature, the hours spent in criminal defense representation cannot be tied as precisely to specific activities or results which benefit the estate. The bankruptcy court's finding that "the hours expended on the litigation are reasonable given the nature, complexity and difficulty of the issues involved" is not clearly erroneous. See Findings of Fact and Conclusions of Law, filed in this Court on April 9, 1990.

### C.

■ The third issue is whether the bankruptcy court erred in awarding attorneys' fees which were to be shared with an attorney whose retention had not been authorized by the court. The government asserts that a portion of the fees awarded to appellee Hastings was shared with Thomas C. Smith, Kentucky counsel for the debtor. According to the government, this arrangement was clearly a fee-splitting arrangement prohibited by 11 U.S.C. § 504. Appellee Hastings argues that in the course of his representation of the debtor it was necessary to subpoena a material witness located in Kentucky. Since none of the debtor's counsel were licensed in Kentucky it became necessary to retain Mr. Smith to obtain the subpoena. This arrangement according to the appellee is not a proscribed fee-sharing arrangement, but rather is merely the payment of a reasonable expense for a necessary service.

11 U.S.C. § 504(a) prohibits, with certain exceptions not relevant here, the sharing of any compensation received pursuant to 11 U.S.C. § 503(b)(4). By enacting § 504, "Congress sought to generally prohibit the

---

1. Fifth Circuit opinions rendered prior to October 1, 1981 are considered binding in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

sharing of compensation or fee splitting among attorneys in a bankruptcy case." *In re Matis*, 73 B.R. 228, 231 (Bankr. N.D.N.Y.1987). As explained more fully in *In re Matis*, the purpose of the statute is to ensure that lawyers preserve the integrity of the bankruptcy process and not treat "bankruptcy matters as matters of traffic." *Id.* In the instant case, the appellees argue that their arrangement with Mr. Smith represents nothing more than payment for a required service, not the sharing of attorneys' fees. The bankruptcy court found that "[n]one of the fees requested by the application will be shared with any other person or entity." Bankruptcy Order at 3, ¶ 3.

The Court finds that this holding is not a clearly erroneous application of § 504 to the facts of this case. The appellant has not submitted any substantiation for its claim that this arrangement was anything more than payment to the Kentucky attorney for a service. If the subpoena could have been obtained and served by a non-attorney, § 504 would not be applicable. The fact that the subpoena required the services of a lawyer does not change the nature of the payment. Similarly, the payment in dispute here does not contravene the purposes of Congress. Therefore, the Court will affirm the Bankruptcy Court's Order with regard to the payment to Thomas C. Smith.

### D.

■ The final issue is whether the bankruptcy court erred in awarding reimbursement for items which the government characterizes as overhead. The government argues that Mr. Hastings should not be reimbursed for expenses for postage, Federal Express, and fax services which should be considered items of overhead. In support the appellant cites *In re Seneca Oil Co.*, 65 B.R. 902, 913 (Bankr.W.D.Okla.1986). Contrary to the government's assertion, *Seneca Oil Co.* does not support their argument that the challenged expenses are not compensable. The *Seneca Oil Co.* court held that items of overhead are a part of the cost of doing business and not chargeable to the estate. However, that court defined these items of overhead as "general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or case." *Id.* at 912. Unlike the expenses disallowed in that case, the expenses challenged here are specific charges for specific services for the benefit of this particular client. See also *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 834 (Bankr. D.Vt.1987). The Court, therefore, finds that the bankruptcy court's allowance of the challenged postal expenses is not clearly erroneous.

### E.

In summary, having found that the bankruptcy court's order was not clearly erroneous and having found that the appellant's challenges are without merit, the Court will affirm both of the bankruptcy court's orders *in toto*.

Accordingly, it is

ORDERED:

1. That the bankruptcy court's Order in Case Number 90–56–Civ–Oc–14 (Bankruptcy No. 87–1682–Bk–J–11), dated January 10, 1990, filed in this Court on April 9, 1990, allowing compensation for professional services and reimbursement of expenses to Robert R. Hastings, Jr., is hereby affirmed.

2. That the bankruptcy court's Order in Case Number 90–57–Civ–Oc–14 (Bankruptcy No. 87–1682–Bk–J–11), dated January 10, 1990, filed in this Court on April 9, 1990, allowing compensation for professional services and reimbursement of expenses to the firm of Miller, Cassidy, Larroca & Lewin is hereby affirmed.

3. That the Clerk of the Court shall enter judgment for the appellees and against the appellants.

DONE AND ORDERED.