**In re William ENGEL, Debtor.**

**Bankruptcy No. 94–30017.**

United States Bankruptcy Court,
D. New Jersey.

Dec. 20, 1995.

Opinion Denying Reconsideration
Dec. 20, 1995.

Wasserman, Jurista & Stoltz, Robert B. Wasserman, Daniel J. Yablonsky, Millburn, NJ, Ferrara & Hantman, Robert J. Hantman, Jersey City, NJ, for Debtor.

Nicolette & Perkins, David A. Nicolette, Oradell, NJ, for Creditor Jesus Alvarez, Administrator Ad Prosequendum and Administrator of the Estate of Xiomara Alvarez.

Rem, Zeller & Associates, Joseph E. Rem, Jr., Hackensack, NJ, Myron D. Milch, Hackensack, NJ, for Creditor Estate of Xiomara Alvarez.

## OPINION

## PROCEDURAL BACKGROUND

WILLIAM H. GINDIN, Chief Judge.

This case arises from an objection to a $291,458 fee application made by debtor's special criminal counsel, Ferrara & Hantman, heard on September 6, 1995. This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## FACTS

Debtor, William Engel ("debtor"), is serving a life sentence in Trenton State Prison for the murder of his former wife, Xiomara Alvarez (Engel), in 1984. The debtor was also a defendant in a civil action for wrongful death commenced by the Estate of Xiomara Alvarez. The criminal conviction was appealed to the Appellate Division of the Superior Court of the State of New Jersey. In 1991, the Appellate Division issued a 67 page opinion which considered all of the numerous legal issues raised by the debtor and affirmed the conviction.

The Appellate Division made the following statement concerning the defendant's guilt:

We have previously characterized the trial record in this case as "fairly reek[ing] of defendants' guilt." A fair examination of the transcript admits of no other conclusion ... We find no sound basis to vitiate defendants' well deserved convictions.

*State v. Engel,* 249 N.J.Super. 336, 402–403, 592 A.2d 572 (App.Div.1991), *cert. denied* 130 N.J. 393, 614 A.2d 616 (1992).

Debtor's appellate counsel, sought *certiorari* to the Supreme Court of the State of New Jersey in 1992, which denied *certiorari* in *State v. Engel,* 130 N.J. 393, 614 A.2d 616 (1992).

The debtor filed a voluntary chapter 11 petition on January 6, 1994. The issue of the retention of special criminal counsel was raised as early as March 21, 1994. During the course of argument on an unrelated matter, debtor's counsel raised the issue of criminal counsel and this court responded that debtor would have to pay criminal counsel from debtor's personal funds and not estate funds.

Debtor made a formal application for retention of Ferrara & Hantman ("F & H") as special criminal counsel on April 13, 1994. Debtor sought the retention so that F & H could file and prosecute a petition for post-conviction relief and a request for a new trial. This court held a telephonic hearing on the objection of the Estate of Xiomara Alvarez on May 16, 1994. The court stated that F & H could not be paid from estate funds. The court entered an order which held that debtor could retain special counsel but "compensation to such special counsel shall be determined by this court upon proper application."

It was later discovered that F & H had been paid $30,000 from estate funds in disregard of this court's order and F & H was ordered to disgorge that sum on October 31, 1994. The court held that the test for allowing the fee is whether the allowance is in the best interest of the *estate.* The debtor appealed and the district court affirmed this court's ruling. This court also heard and denied a motion to reconsider that ruling on April 6, 1995.

The petition for post-conviction relief was filed with the Superior Court of the State of New Jersey on March 29, 1995. Honorable Jonathan Harris heard a preliminary motion on July 14, 1995. Judge Harris agreed to hold a hearing on September 27, and September 28, 1995 on only two of the nine issues raised by debtor.—(i) ineffective assistance of counsel and (ii) whether debtor's trial counsel, Miles Feinstein, had a conflict of interest because he had represented Her-

bert Engel, the debtor's brother.[1] As of the date that this fee matter was heard, the post-conviction relief motion was pending.

Meanwhile, the Estate of Xiomara Alvarez has obtained a favorable jury verdict in the civil wrongful death case and a judgment was entered on July 21, 1995 for $5,154,197.

## DISCUSSION

The compensation of professionals is generally determined under the standard provided in 11 U.S.C. § 330(a) which provides that:

"... the court may award ... to a professional person ... (1) reasonable compensation for *actual, necessary* services rendered by such ... professional ... based upon the nature the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for *actual, necessary* expenses." (Emphasis added).[2]

The majority of courts which have interpreted this code section have held that an element of whether such services are "necessary" is whether they benefitted the bankruptcy estate. *In re Lederman Enterprises, Inc.,* 997 F.2d 1321 (10th Cir.1993); *In re Alcala,* 918 F.2d 99 (9th Cir.1990); *In re Sound Radio,* 145 B.R. 193 (Bankr.D.N.J. 1992); *In re Dixon,* 143 B.R. 671 (Bankr. N.D.Tex.1992); *In re Latham,* 131 B.R. 238 (Bankr.S.D.Fla.1991); *In re Jessee,* 77 B.R. 59 (Bankr.W.D.Va.1987); *In re Deihl,* 80 B.R. 1 (Bankr.S.D.Me.1987); *In re Cleveland,* 80 B.R. 204 (Bankr.S.D.Cal.1987).[3]

■ A careful distinction must be made between those services which benefit the debtor personally and those which benefit the bankruptcy estate. *In re Sound Radio,* 145 B.R. at 196. Upon filing a chapter 11 petition, a new entity is created, the debtor in possession. The debtor in possession marshals assets, uses law to further increase them through avoiding powers, administers the business of the estate and distributes assets to creditors. *In re Duque,* 48 B.R. 965, 969 (S.D.Fla.1984). The individual debtor, William Engel, becomes subject to certain duties. "He gives up his property except for that which is exempt, files schedules of assets and liabilities, files periodic reports, ... may share in assets if any remain after satisfying creditors' claims, and in absence of proven objections to discharge is discharged of his pre-petition liabilities, thus receiving the so-called fresh start." *Id.*

■ Estate assets may be used to further the above goals of the bankruptcy estate or debtor in possession, but not the individual debtor. *In re Sound Radio,* 145 B.R. at 211–212. Thus only those fees which benefit the estate or increase the assets of the estate may be compensable from the estate—not those fees which further personal interests of the individual, William Engel.

## CRIMINAL COUNSEL CASE LAW

■ There is an entire body of case law dealing with the appointment and compensation of criminal counsel by a bankruptcy debtor. The cases hold almost unanimously, that criminal counsel may not be compensated out of the bankruptcy estate. *In re*

1. With respect to the hearing in front of Judge Harris, the fact that a superior court judge determines that he will examine into certain allegations does not in the view of this court constitute anything other than the fact that the superior court is examining those allegations.

2. The Bankruptcy Reform Act of 1994 ("BRA") does not apply to this case since it was filed before October 21, 1994. *See Matter of Gribbon,* 181 B.R. 179, 181 n. 7 (Bankr.D.N.J.1995) (The 1994 Amendment only applies to cases commenced after October 21, 1994). The BRA does not permit a court to allow compensation unless it is "reasonably likely to benefit the debtor's estate."

3. While *In re Busy Beaver,* 19 F.3d 833 (3d Cir. 1994), is a thorough and cogent opinion, it simply does not deal with the issue of benefit to the estate or "actual or necessary" expenses. It deals with the "reasonableness" of fees focussing on such specifics as the hourly rate permitted to bankruptcy attorneys and whether paralegal services are compensable. *Id.* The case also determined the jurisdiction of the bankruptcy court to *sua sponte* object to fee applications in the absence of any formal objections. *Id.* Debtor's voluminous brief (nearly 19 pages devoted to the issue of "hourly rate" or reasonableness of the fees) is simply not applicable. A preliminary determination must be made that the fees are in fact for "actual, necessary services."

*French,* 139 B.R. 485 (Bankr.D.S.D.1992) (no criminal counsel fees for initial prosecution of perjury trial); *In re United Church of Ministers of God,* 84 B.R. 50 (Bankr.E.D.Pa.1988) (no criminal counsel fees for initial prosecution of torturer murder); *In re Duque,* 48 B.R. 965 (S.D.Fla.1984) (no criminal counsel fees permitted for initial prosecution of debtor for embezzlement and fraud); *In re Official Committee of Disputed Litigation Creditors,* 42 B.R. 981 (N.D.Tex.1984) (no criminal counsel fees for appeal of state securities fraud conviction of debtor); *In re Tashof,* 33 B.R. 225 (Bankr.D.Md.1983) (no counsel fees for initial prosecution of SEC criminal violations); *In re Warner,* 141 B.R. 762 (M.D.Fla. 1992) (bankruptcy court did not abuse its discretion in compensating appeal of $22 million criminal judgment where bankruptcy court in its discretion found likely benefit to the estate). Curiously, until oral argument, the debtor did not cite to or attempt to distinguish a single case dealing with the issue of criminal counsel.

The seminal case on the issue of criminal counsel is *In re Duque,* 48 B.R. 965 (S.D.Fla. 1984). In that case, the district court reversed the bankruptcy court for awarding fees for debtor's special criminal counsel and conducted a thorough and persuasive analysis of the statute, the existing case law, and the policy implications.

*In re Duque* started its analysis with the legislative history to the bankruptcy code, which states that "the bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension."³ *Id.* at 971 (citing H.R.Rep. No. 95–595 95th Congr. 1st Sess. 342 (1977)) (discussing the automatic stay, and that criminal actions may proceed in spite of the bankruptcy).

The opinion next explored the existing case law and found that the cases held unanimously, although, without analysis, that debtors may not be compensated for criminal counsel. *Id.* (The exception was where counsel was representing the trustee and estate only as witnesses. *Matter of Investors Funding Corp.,* 422 F.Supp. 461 (S.D.N.Y.1976)).

*In re Duque,* then turned to the statute, 11 U.S.C. §§ 330 and 327(e) (appointment of

professionals), and relying on the language "actual, necessary services," found that the statute only permits compensation to criminal counsel where the services benefit the estate. 48 B.R. at 970–971. *Duque* noted that the potential threat to the bankruptcy estate, that criminal counsel was allegedly protecting, could not be "speculative or conjectural." *Id.* at 975.

The court adopted a three-part standard which has been uniformly followed in the area of criminal counsel. *See In re French,* 139 B.R. 485 (Bankr.D.S.D.1992); *In re United Church of Ministers,* 84 B.R. 50 (Bankr.E.D.Pa.1988). The standard provides as follows:

1. The attorney's employment must be in the best interest of the estate, which means property of estate is threatened and the need for services is real. Employment cannot be based on some "hypothetical or speculative benefit."

2. Special counsel must provide a benefit to the estate, not merely a personal benefit to the debtor. The benefit is gauged by needs of estate and whether it is directly related to the debtor in possession's performance of duties under the bankruptcy code.

3. Issues regarding debtor's constitutional right to counsel are of concern to the criminal forum and not the bankruptcy court.

*In re Duque,* 48 B.R. 965.

Initially, it must be noted that estate property is not threatened by the failure to overturn the conviction. If the debtor is released from prison, any post-petition earnings from new assets would not be part of the estate. *In re Bernheim (Firtel v. Bernheim),* 62 B.R. 739, 742 (Bankr.D.N.J.1986). Further and of more significance, debtor easily fails the standard for appointment of criminal counsel. The facts of this case are much stronger than all but two of the numerous cited cases on criminal counsel. Those cases all involved the initial prosecution of the debtor. In this case (as in none of the cited authorities) there has been an exhaustive appellate review. This is not a first blush look at this matter. This court has the benefit of an

appellate division opinion which explained its view of defendant's guilt in unusually strong terms. Thus the likelihood of any benefit to the estate is extremely remote.

To realize any benefit to the estate, debtor would first have to be granted a new trial. Second, debtor would have to win an acquittal of the new trial. Finally, debtor must clear yet a third hurdle before any benefit is realized to the estate. Debtor would have to overturn the civil wrongful death case.

 As this court has already noted, the overturning of the wrongful death case is no "sure bet." While it has been asserted that the civil court dealt with the question of guilt as a matter of *res judicata*, it must be noted that if the civil matter is retried, different standards of proof would apply in the civil case then that which would apply in the criminal case. The standard of proof in criminal convictions is "beyond reasonable doubt" whereas the standard of proof in a civil wrongful death case is "preponderance of evidence." Therefore, the first two hurdles are wholly independent of the third, making the task that much more difficult. Thus this court finds that any benefit is purely conjectural, hypothetical and speculative at best. It is improper for this court to drain the assets of the estate pursuing pipe dreams which at best would benefit the debtor personally. Accordingly, the application for fees is denied.

## CONCLUSION

For all of the above reasons, this court finds that the services of Ferrara & Hantman are not "actual, necessary services" because they do not benefit the bankruptcy estate, but rather the debtor personally. Accordingly, the application of Ferrara & Hantman for compensation as debtor's special criminal counsel does not meet the statutory standard provided by 11 U.S.C. § 330(a). The fee application of Ferrara & Hantman is thus denied. The stay previously issued by this court regarding the disgorgement by Ferrara & Hantman of a $30,000 retainer will remain in effect pending final outcome of any properly perfected appeal.

*Counsel for debtor shall submit an appropriate form of order within ten (10) days of receipt of this opinion.*

## OPINION ON RECONSIDERATION

### PROCEDURAL BACKGROUND

This Motion For Reconsideration arises from this court's denial of a fee application made by debtor's special criminal counsel, Ferrara & Hantman, heard on September 6, 1995. *See In re Engel,* No. 94–30117 (Bankr. D.N.J. Dec. 20, 1995). The court entered an oral opinion on that date which has since been committed to writing. *Id.* Ferrara & Hantman requests that this court reconsider its holding based upon newly discovered evidence which was allegedly "overlooked" in this court's prior decision. This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### FACTS

The facts remain largely unchanged since this court first heard Ferrara & Hantman's fee application for compensation as special criminal counsel in debtor's petition to overturn his conviction for the murder of his former wife Xiomara Alvarez (Engel). The Honorable Jonathan Harris, J.S.C., held a preliminary hearing on July 14, 1995, on debtor's post-conviction relief petition. Judge Harris agreed to hold a further evidentiary hearing on the issues of ineffective assistance of counsel and whether debtor's trial counsel had a conflict of interest while he represented debtor. This court has reviewed a videotape of the preliminary hearing before Judge Harris, ("preliminary hearing"), as well as audio tapes of statements made by Robin Furer, a prosecution witness, ("Robin Furer Statement"). Judge Harris has not yet ruled on the motion for a new trial, and the evidentiary hearing has been continued to January 8, 1996.

### DISCUSSION

### I. MOTION FOR RECONSIDERATION

 A motion for reconsideration of an order entered in a bankruptcy case may be

212

granted if the moving party has provided the court with dispositive factual matters or controlling decisions of law which were overlooked. *See Local Bankruptcy Rule* 3(h); *Local District Rule* 12(I); *West End Associates v. Sea Green Equities,* 1994 WL 405636, *1 (D.N.J. August 1, 1994). Reconsideration is an extremely limited procedural device; and it is inappropriate to be used to reargue positions previously made or to otherwise ask the court to rethink issues already considered. *Resorts International v. Greate Bay Hotel & Casino,* 830 F.Supp. 826 (D.N.J. 1992); *Goldberg v. Gebroe,* 1994 WL 405410 (D.N.J. Aug. 1, 1994) (citing *Oritani S & L v. Fidelity & Deposit Association,* 744 F.Supp. 1311, 1314 (D.N.J.1990)). A court will also grant reconsideration if the case is complex and the ruling affects a new issue of law. *Resolution Trust Corp. v. Moskowitz,* 868 F.Supp. 634, 636 (D.N.J.1994).

Ferrara & Hantman urges this court to revisit its earlier opinion in this matter asserting that: (i) the court overlooked the preliminary hearing held by Judge Harris, whereby he agreed to hold an evidentiary hearing on two constitutional issues; and (ii) the audio tapes of the Robin Furer Statement have become available for consideration by the court. Ferrara & Hantman argues that these that two facts evidence that the estate will realize a benefit from its representation. The court is not persuaded that either of these facts present *dispositive or overlooked* factual matters which warrant reconsideration. As well, the ruling in this case will *not* affect a new issue of law, because the courts have ruled almost unanimously that criminal counsel may not be

1. Debtor mis-characterized this court's ruling on the benefit to the estate standard. Quoting from the 1994 Bankruptcy Reform Act, Ferrara & Hantman contends that "[the] Court determined that Bankruptcy Code § 330(a) ... requires a finding that the services are ... reasonably likely to benefit the bankruptcy estate." The Court's Opinion in this matter *specifically* states that the ruling is *not* based on the "reasonably likely to benefit" standard. The court stated in Footnote 2: "The Bankruptcy Reform Act of 1994 ("BRA") **does not apply** to this case since it was filed before October 21, 1994." *See Engel Opinion,* at 209.

2. The standard provides:

compensated out of the bankruptcy estate. *See Engel Opinion,* at 209.

## II. BENEFIT TO THE ESTATE

This court determined that in order for criminal counsel fees to be paid out of the bankruptcy estate, the corresponding criminal counsel services must benefit the bankruptcy estate, as per the standard set forth in 11 U.S.C. § 330(a). *See Engel Opinion,* at 209.[1] This court further determined that in order to find that those criminal counsel services were of benefit to the bankruptcy estate, debtor must survive the widely-cited standard of *In re Duque,* 48 B.R. 965 (S.D.Fla.1984).[2] The court analyzed Ferrara & Hantman's fee application according to the *In re Duque* standard and determined that debtor failed to meet this standard because the benefit to the bankruptcy estate of employing Ferrara & Hantman was 'extremely remote." *See Engel Opinion,* at 210–211. Specifically this court found that debtor had three hurdles to overcome before the estate would realize any benefit by the employ of Ferrara & Hantman. First, debtor must be granted a new trial. Second, debtor would have to win an acquittal. Finally, debtor must overturn the civil wrongful death judgment. Ferrara & Hantman's brief analyzes only the first hurdle as to overturning the conviction, and thus does not present any argument or additional facts that render overcoming the second and third hurdles any less speculative.

Ferrara & Hantman urges that the benefit to the estate from its services is not speculative, "[d]espite the fact that the Debtor was convicted of murder ten years ago and had

1. The attorney's employment must be in the best interest of the estate, which means property of the estate is threatened and the need for services is real. Employment cannot be based on some "hypothetical or speculative benefit."
2. Special counsel must provide a benefit to the estate, not merely a personal benefit to the debtor. The benefit is gauged by needs of estate and whether it is directly related to the debtor in possession's performance of duties under the bankruptcy code.
3. Issues regarding debtor's constitutional right to counsel are of concern to the criminal forum and not the bankruptcy court.
*In re Duque,* 48 B.R. 965.

already exhausted his post conviction appeals once before, [because the Superior Court], has found the evidence so compelling as to warrant a full evidentiary hearing to determine whether serious constitutional violations occurred in the representation of the Debtor in the criminal court." *Ferrara & Hantman's Memorandum of Law* at 6. While the outcome of the hearing on the conflict of interest and ineffective assistance of counsel is significant to the disposition of debtor's criminal case, it is inconsequential to Ferrara & Hantman's attempt to secure postconviction relief counsel through estate funds, (and this motion for reconsideration) for the following reasons.

First, even if counsel is successful in the superior court hearing, and Judge Harris grants debtor a new trial, the benefit to the estate by the employment of Ferrara & Hantman remains highly speculative. Assuming *arguendo* that debtor is granted a new trial, debtor still must win an acquittal in the criminal case and overturn the judgment in the civil case. Focusing exclusively on the granting of a new trial does not render the employ of Ferrara & Hantman any less speculative. Securing a new trial is wholly independent from winning an acquittal. The grounds for securing a new trial is based on alleged constitutional defects, whereas an acquittal is won if the state does not prove guilt beyond a reasonable doubt. Thus, the court does not agree with Ferrara & Hantman's characterization that the "granting of a new trial would change the entire complexion of this fee application," *Ferrara & Hantman's Memorandum* at 7, because the granting of debtor's new trial in debtor's criminal case has no bearing upon defendant's guilt or innocence in the murder of Xiomara Alvarez (Engel), and is therefore irrelevant to the granting of the fee application.

Furthermore, the court did not deny Ferrara & Hantman's fee application "based in part on the assumption that Judge Harris will deny the motion for a new trial in the criminal case." *Id.* The court made this ruling pursuant to the Third Circuit benefit

to the estate requirement and pursuant to the test articulated in *In re Duque,* 48 B.R. 965 (S.D.Fla.1984). In so applying the *Duque* analysis, the court found that the services of Ferrara & Hantman were not actual, necessary services because those services benefit debtor personally and not the bankruptcy estate. *See Engel Opinion,* at 211.

Second, Ferrara & Hantman urges reconsideration of this court's denial of fees because Ferrara & Hantman's services were solely responsible for Judge Harris' decision to hear the constitutional arguments. Ferrara & Hantman concludes that the decision to hold an evidentiary hearing evidences that its services are in the best interest of the estate. *Ferrara & Hantman Memorandum* at 6. The court is not persuaded by Ferrara & Hantman's argument because, as explained above, even the granting of a new trial does not render the benefit to the estate less speculative. Moreover, in asserting this argument, Ferrara & Hantman is requesting that the court revisit issues already considered, a process which is inappropriate in a motion for reconsideration. *Resorts International v. Greate Bay Hotel & Casino,* 830 F.Supp. 826 (D.N.J.1992); *Goldberg v. Gebroe,* 1994 WL 405410 (D.N.J. Aug. 1, 1994). The court previously considered that Judge Harris agreed to hold an evidentiary hearing on the constitutional issues and found that: "With respect to the hearing in front of Judge Harris, the fact that a superior court judge determines that he will examine into certain allegations does not in the view of this court constitute anything other than the fact that the superior court is examining those allegations." *See Engel Opinion,* at 209 n. 1.

## III. EVIDENTIARY HEARING AND ROBIN FURER STATEMENT

Although the outcome of the hearing before Judge Harris is immaterial to this motion for reconsideration, the court did examine existing case law with regard to issues of ineffective assistance of counsel.[3]

3. While Judge Harris mentioned that he was concerned with a possible conflict of interest

during Miles Feinstein's representation of the debtor, he emphasized more the *Strickland v.*

■■■■ Debtor's claim that his trial counsel, Miles Feinstein's, representation was ineffective is governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (For the Third Circuit's recent *en banc* analysis and application of the *Strickland* test, *see Flamer v. Delaware*, 68 F.3d 736 (3d Cir.1995)). The test provides that (i) defendant must show that counsel's performance was deficient. For example, counsel's representation fell so far below an objective standard of reasonableness under prevailing professional norms, that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; and (ii) that counsel's ineffectiveness was prejudicial. "When a defendant challenges a conviction the question is whether there is a reasonable probability that absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068–2069. For instance, counsel's errors were so serious as to deprive the defendant of a fair trial of which the results are reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Clearly, debtor has an extremely difficult burden to show that his counsel's representation rises to the level of ineffective assistance of counsel under the *Strickland* test. Given the overwhelming physical evidence against the debtor, McFadden's (the assassin) confession, testimony and physical evidence corroborating McFadden's confession, along with the fact that the Appellate Division upon review of the trial court's conviction of the debtor expressed in unequivocally strong language their certainty of debtor's guilt, debtor is hard-pressed to show that the outcome of the proceeding without the alleged mistakes by counsel likely would have been different.

In conjunction with this court's examination of the constitutional issues before Judge Harris, this court also reviewed the Robin Furer Statement. At the outset, for the same reasons, that the outcome of the evidentiary hearing before Judge Harris is immaterial to this court's ruling, the content of the Robin Furer Statement is likewise irrelevant. However, upon review of the same, and putting aside issues of credibility, Ms. Furer's statements do not contradict the prosecution's theory of the case. Rather, Ms. Furer's statements corroborate much of the prior testimony, and place McFadden with debtor's co-conspirator during the critical time of the conspiracy to commit the crime of which debtor and his brother were ultimately convicted.

## IV. *In re WARNER* ISSUES

The majority of cases hold that criminal counsel may not be compensated out of the bankruptcy estate. (*See Engel Opinion*, at 209–10, where the case law is extensively set forth.) Noted in this court's decision denying Ferrara & Hantman's fee application is that the bankruptcy court did award criminal counsel fees paid from the bankruptcy estate in *In re Warner*, 141 B.R. 762 (M.D.Fla. 1992). Ferrara & Hantman rely on this minority holding to persuade this court to reconsider its earlier denial of the fee application. Additionally, this court did consider *Warner* in its initial hearing. *See Engel Opinion*, at 210.

*Warner* is distinguishable from the case at bar, and does not present to the court a controlling issue of law which was overlooked in the underlying hearing on the fee application. *Warner* involved an *initial* appeal of a judgment imposing a $22,250,000.00 liability upon the estate. In the instant case, there has been extensive appellate review. In addition, *Warner* involved a *direct* attack of a judgment against the bankruptcy estate. In the instant case, debtor must win an acquittal *and* overturn the civil judgment before the judgment may be attacked as to the bankruptcy estate itself. Finally, this court thoroughly applied the *Duque* analysis to the facts presented in this case and found that the employ of criminal counsel was not in the best interest of the estate. Such a determi-

---

Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), concerns. Accordingly, this court's inquiry focused more on the *Strickland* issues than on the conflict of interest issues. *Id.*

The court notes that Ferrara & Hantman cites no law on the issue but merely mentions "conflict of interest" in its brief.

nation is an extremely fact sensitive decision and is one that is within the discretion of the bankruptcy court. *In re Duque,* 48 B.R. 965; *In re Warner,* 141 B.R. 762.

Ferrara & Hantman still has not presented this court with any argument, evidence, or controlling issues of law which were overlooked sufficient to persuade this court that, despite extensive appeals, it is remotely possible that debtor may win an acquittal and overturn the civil judgment against him. Therefore, in this court's analysis, the outlook of the estate realizing any benefit from the services of Ferrara & Hantman remains as dismal as when the Appellate Division stated:

> We have previously characterized the trial record in this case as "fairly reek[ing] of defendants' guilt." A fair examination of the transcript admits of no other conclusion ... We find no sound basis to vitiate defendants' well deserved convictions.

*State v. Engel,* 249 N.J.Super. 336, 402–403, 592 A.2d 572 (App.Div.1991), *cert. denied* 130 N.J. 393, 614 A.2d 616 (1992).

Ferrara & Hantman raises as a supplemental issue that it would be inequitable for this court to deny compensation because hours have already been expended on debtor's behalf. The court is not impressed by this argument, because counsel was warned repeatedly as early as May 17, 1994 that counsel fees were not to be paid out of the bankruptcy estate. Thus, Ferrara & Hantman has assumed the risk of non-compensation.

### *CONCLUSION*

For all the above reasons, this court finds that Ferrara & Hantman has not presented the requisite factual considerations to warrant reconsideration of this court's earlier denial of fee application in this matter. The realization of the benefit to the estate from Ferrara & Hantman's services remains speculative and remote. Accordingly, counsel does not meet the test set forth in 11 U.S.C. § 330(a). The motion for reconsideration is thus denied. A standard order will be entered.